Cristina P. Carrier, Esq.
1380 Main St, Suite 413
Springfield, MA 01103
Telephone: (877) 628-7694
Facsimile: (413) 895-5352
E-mail: cristina@cristinapcarrier.com
*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

Case No.:

KRIS PORTIER, EDWARD SNELGROVE  )
ANTONIO BATALHA, KRISTINE TANSIL )
JOHN TANSIL, JOSE RIVAS and             )
 MILTON MANZANO,                              )
INDIVIDUALLY AND ON BEHALF OF    )
                                                              )
 Plaintiffs,                                            )
                                                              )
        v.                                                )
NEO Technology Solutions dba/            )
OnCore Holdings LLC,                          )
 OnCore Manufacturing, LLC,               )
Natel Engineering Co, Inc.                    )
NEO Tech, North America                     )
NEO Tech Inc. and any all other names used  )
By NEO Technology Solutions                )
Defendants                                          )

## COMPLAINT

Kris Portier, Edward Snelgrove, Antonio Batalha, Kristine Tansil, John Tansil, Jose

Rivas, and Milton Manzano (collectively, "Plaintiffs"), individually and on behalf of all other

similarly situated employees and family members, file this action against the defendants, NEO

Technology Solutions("NEO Tech"), OnCore Manufacturing, LLC("OnCore"), Natel

Engineering Co, Inc. ("Natel") (collectively defendants") to recover damages caused by NEO Tech's negligent and unlawful release of the IRS Form W-2 Wage and Tax Statement date for calendar year 2016 relating to approximately 1400 of the Defendants' employees.

## INTRODUCTION

1. For purposes of income tax reporting, the Internal Revenue Service requires employers to record and report sensitive personal identification information, including names, addresses, earnings and Social Security numbers, of all employees on an annual basis. The information relating to each individual employee is reported to respective employees on an IRS Form W-2 Wage and Tax Statement, while the Form W-2 data for all employees is compiled and reported to the IRS as an electronic database. Form purposes of this complaint, such database is referred to as "W-2 Data".

2. On or about January 27, 2016, a Vice-President of NEO Tech, Zareen Mohta (hereinafter "Mohta"), an employee, responded to an Internet "phishing" scam by forwarding to unknown cybercriminals the calendar year 2016 W-2 data and password hints for the data, for all of NEO Tech's North American Division Employees, including but not limited to those employees of NEO Tech, OnCore and/or Natel Engineering Co, Inc. employees in North America who were employed for any payroll period during calendar year 2016.

3. On information and belief, the released 2016 W-2 Data related to approximately 1400

current and former employees, some of whom were employed in Massachusetts, Ohio and California.

4.   In addition to the 2016 W-2 Data file, which was not encrypted but merely password protected, Mohta <u>twice</u> responded to subsequent requests of the cybercriminals for the password to the 2016 W-2 Data file by providing a password hint, the second stronger than the first.

5.   Prior to the unlawful release of the 2016 W-2 Data on or about January 27, 2017, NEO Tech had experienced other employee data breaches, including one involving the release of employees' health insurance and other benefit information. NEO Tech's information technology (IT) department had urged the use of encryption software to protect such data, but members of NEO Tech's upper management, including Mohta, declined to act on that recommendation.

6.   On information and belief, NEO Tech's upper level management personnel met to discuss the situation within hours of the release of the 2016 W-2 Data. NEO Tech's upper management employees were able to take advantage of their knowledge of the release to take immediate action to protect their own personal finances, but did not provide the same opportunity for the remainder of the 1400 employees. Instead, NEO Tech did not inform other employees of the breach until, at the earliest, January 31, 2017 and as late as two weeks later in the case of former employees, thereby allowing the cybercriminals time to make unlawful use of the W-2 Data.

7.  Despite assertions to the contrary, NEO Tech did not report the incident to local police, the Attorney General's office or the Internal Revenue Service, as is required by law in California and Massachusetts, until at least ten days after the wrongful release, thereby allowing the cybercriminals additional time to avoid detection and to use the employees' W-2 Data.

8.  Almost immediately after the release of the W-2 Data and the pass word hints supplied by Mohta, the cybercriminals exploited NEO Tech's wrongful actions by filing fraudulent federal and state tax returns in the names of employees. Some employees have since learned that the cybercriminals filed fraudulent *joint* tax returns using not only the employee's Social Security number, but also the employee's spouse's Social Security number. In addition, the cybercriminals have filed for education financial assistance under Federal aid programs (FAFSA) programs using the names of children or affected employees.

9.  Employees and their family members who know that their W-2 information has been wrongly utilized by others have been forced to take leave, pay for pre-arranged expenditures, such as but not limited to, summer camp fees and home/car repairs, with credit cards or loans having not had immediate access to their tax returns, pay tax professionals to rectify fraudulent tax returns, engage credit monitoring services to protect their identity and credit, and/or have sought legal counsel to respond to attacks on their credit and tax status.

10. Employees who are not yet aware of any wrongful use of their personal data are now, and for the rest of their lives will be, at a heightened risk of identity theft. Many such employees have suffered, and will continue to suffer out-of-pocket costs to protect their identities and if

necessary repair their credit rating.

11. By this action, Plaintiffs seek to hold Defendants responsible for the harm caused by NEO Tech's negligence.


## JURISDICTION AND VENUE

12.  This Court has jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5 million, exclusive of interest and costs, and NEO Tech has reached into Massachusetts and Ohio to conduct business, in addition to California where it is headquartered. The members of the proposed classes are citizens of these states.

13. . This Court has personal jurisdiction over NEO Tech because NEO Tech maintains two significant places of business in this District, is registered to conduct business in Massachusetts, and has sufficient minimum contacts with Massachusetts.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because NEO Tech's subsidiary OnCore/Natel resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## PARTIES AND RELATED ENTITIES

15. Plaintiff Kris Portier is a resident of Massachusetts and an Employee of OnCore/NEO Tech. NEO Tech informed Mr. Portier on January 31, 2017 at a meeting in Springfield,

Massachusetts that NEO Tech had released his Form W-2 data on or about January 27, 2017.

16.  Plaintiff Edward Snelgrove is a resident of Massachusetts. Mr. Snelgrove was employed by OnCore/NEO Tech in 2016 in Springfield, Massachusetts. Mr. Snelgrove first became aware that NEO Tech had released his Form W-2 data on or about January 27, 2017 through his duties in the IT department.

17.  Plaintiff Antonio Batalha is a resident of Massachusetts and a former Employee of Oncore/NEO Tech in 2016. NEO Tech informed Mr. Batalha by mail on or about February 10, 2017 that NEO Tech had released his Form W-2 data on or about January 27, 2017.

18.  Plaintiff John Tansil is a resident of California and is a former Employee of Oncore/NEO Tech. He was laid off in May 2016. NEO Tech informed Mr. Tansil on or about February 10, 2017 that NEO Tech had released his 2016 Form W-2 data on or about January 27, 2017.

19.  Plaintiff  Kristine Tansil is a resident of California and is the wife of Plaintiff John Tansil. She files her taxes jointly with her husband. She and Mr. Tansil were informed that NEO Tech had released 2016 Form W-2 data on or about January 27, 2017.

20.  Plaintiff Jose Rivas is a resident of Massachusetts and an Employee of Oncore/NEO Tech. NEO Tech confirmed to Mr. Rivas that NEO Tech had released his Form W-2 data on or about January 27, 2017 at a meeting on January 31, 2017.

21. Plaintiff Milton Manzano is a resident of Massachusetts and an Employee of Oncore/NEO Tech. NEO Tech informed Mr. Manzano at a meeting on January 31, 2017 that NEO Tech had released his Form W-2 data on or about January 27, 2017.

22. Defendant NEO Technology Solutions is a corporation organized under the laws of the state of Delaware with its principal offices in Chatsworth, CA. NEO Tech has manufacturing and engineering locations in California, Colorado, Illinois, Massachusetts, Nevada, Ohio, Tennessee, Mexico, and China. In May 2015 NATEL Engineering and OnCore Manufacturing LLC merged to form NEO Technology Solutions following a previous merger with EPIC Manufacturing corporation. NEO stands for Natel, Epic and Oncore. In 2016 OnCore located in Massachusetts continued to pay all employees in Massachusetts. Even though employees are employed by NEO Tech and human resource issues and benefits are handled by NEO Tech, the payroll for Massachusetts employees is still paid and processed by OnCore LLC.

23. Defendant OnCore Manufacturing is a limited liability corporation organized under the laws of the state of Delaware with its principal place of business in Chatsworth, California and factories in Springfield and Westborough, MA.

24. Defendant Natel Engineering Company Inc. is a corporation organized under the laws of the state of Delaware with its principal office in Chatsworth, California.

**FACTUAL ALLEGATIONS**

25.  In a letter dated January 31, 2017 addressed to individual employees sent by e-mail and or distributed at group meetings, NEO Tech's CFO, Laura Siegal informed employees that NEO Tech, had discovered that it complied with a request during a "phishing" scam (the "Data Breach").  According to NEO Tech, the Data Breach resulted in the release of 2016 W-2 information for approximately 1400 of its and its affiliates' current and former employees. This included all North American OnCore and Natel employees employed at any time in 2016.  The Form W-2 data disclosed the Employees' names, addresses, compensation and Social Security numbers. (A copy of the letter is attached as Exhibit 1.)

26.  NEO Tech did not inform the affected employees for four to ten days following the breach. NEO Tech also failed to report the incident to the local police, the Attorney General in Massachusetts or California, or the Internal Revenue Service for a period of days or weeks.

27. Almost immediately, the cybercriminals began to exploit the Employees' W-2 information by, *inter alia*, filing false federal and state tax returns for some or all of the Employees.  In some cases, the cybercriminals filed joint tax returns, on behalf of an Employee and his or her spouse.  In addition, the cybercriminals have applied for student financial aid using the Employee's social security numbers. The false joint tax returns used the Employee's spouse's Social Security number.  Form W-2 data does not contain the Social Security number for spouses.  The fact that the cybercriminals had obtained the Social Security number for at least some of the Employees' spouses suggests that NEO Tech disclosed in the Data Breach more

information than just Form W-2 data.

28.  The cybercriminals who obtained the Employees' 2016 W-2 information

may continue to exploit the data themselves and/or sell the data in the so-called "dark

markets." Having obtained the Employees' and their spouses names, addresses and Social

Security numbers, cybercriminals can pair the data with other available information to

commit a broad range of fraudulent activities in an Employee's name, including but not

limited to:

        a.   obtaining employment;
        b.   obtaining a loan;
        c. applying for credit cards or spending money;
        d. filing false tax returns;
        e. obtaining medical care;
        f. stealing Social Security and other government benefits; and
        g.  applying  for  a  driver's  license,  birth  certificate  or  other  public document.

29. In addition, if an Employee's or spouses' Social Security number is used to create a false

identification for someone who commits a crime, the Employee and their spouse may become

entangled in the criminal justice system, impairing the Employee's or spouse's or their child's

ability to gain employment or obtain a loan.

30. For the rest of their lives, Plaintiffs and their families and all class members will bear a

heightened risk of all manners of identity theft.

31. The cybercriminals obtained the Employees' and Third-Party Victims' information through

a typical "phishing" scam.  The cybercriminals sent bogus emails to the Vice President of

Human Resources Zareen Mohta at NEO Tech in Fremont California and asked for copies

of all its 2016 W-2 form data.  Due to lack of training, procedures and controls in place at

NEO Tech, as well as a lack of encryption, Ms. Mohta complied with the cybercriminals'

request and forwarded copies of all the OnCore and Natel North America Employees' W-2

data to the cybercriminals.

32. Later the same day Ms. Mohta received at least two emails requesting a password for the

document that she had forwarded to the cybercriminals. She provided them with password

hints, each one more illuminating. The document was not encrypted and the cybercriminals

were then able to obtain full access to the 2016 W-2 information.

33. Ms. Mohta continues to be employed in her position as Vice-President of Human Resources.

34. Following discovery of the Data Breach, NEO Tech focused on protecting itself rather than

the Employees who had been victimized. The disclosure of the information was haphazard.

Some current employees received a letter from the company days later, on or about February

7, 2017, informing them that their personal information had been disclosed. Some current

employees were informed about the breach at two "all hands" meetings on January 31, 2017

and February 1, 2017 where a power point presentation was made and a letter was handed

out and left on a table for those wishing a copy.  Former employees did not receive

notification from NEO Tech until sometime after January 31, 2017.  NEO Tech sent former

employees a letter dated January 31, 2017 which was often not received until on or about

February 10, 2017, informing them of the scam.  Many of the current and former employees

absent on the days of the meetings learned of the Data Breach through alternative sources.

In all cases by the time current and former employees received notice of the Data Breach, whether on January 31, 2017 or later, many were already the victims of identity theft.

35. NEO Tech was not without warning of phishing scams.  Prior to the attack, NEO Tech had been the victim of two prior information breaches, involving health insurance information and retirement plan information that was released, and information stolen on a laptop.  The Information Technology department monitored the system and urged the use of encryption software to no avail.

36. NEO Tech's negligence in safeguarding the Employees' was exacerbated by the fact that the company's senior management, on information and belief, reacted to the breach immediately while allowing over four days to pass before beginning to inform approximately 1400 employees.

37. NEO Tech's negligence is further exacerbated by its failure to encrypt the social security information of employees as required by Massachusetts and California statutes. Management failed to require the Vice-President to use encryption software despite its availability and despite being advised to do so by the Chief Information Officer and his staff.

38.  NEO Tech has conceded its fault in the Data Breach.  NEO Tech's Chief Financial Officer wrote in a January 31, 2017 letter to employees, which was delivered by placing them on a table at a meeting on the same date, "employee wage and tax information was released to an unauthorized recipient. The information was password protected. …"

### NEO Tech's Current and Former Employees Have Been Damaged

39. The Employees were obligated to provide NEO Tech with sensitive personal information, including their Social Security numbers.  NEO Tech had a duty to protect that information against wrongful disclosure to third parties. NEO Tech failed to comply with its duties to its current and former employees and their beneficiaries by failing to implement policies and procedures to prevent cybercriminals and scammers from obtaining the Employees' W-2 information.

40.  The disclosure of an individual's Social Security number puts one at great risk of future fraudulent conduct.  By pairing a Social Security number  with someone's name, address and, perhaps, other readily available information, an identity thief can commit a broad range of fraud, including but not limited to a) obtaining unemployment; b) obtaining a loan; c) applying for credit cards or spending money under the victim's name; d) filing false tax returns; e) obtaining medical care; f) stealing Social Security and other government benefits; and g) applying for a driver's license, birth certificate or other public document.   Any of these activities can cause significant financial and emotional harm to

a victim.

41. The Social Security Administration does not provide replacement Social Security numbers except in extreme cases, and through their negligence NEO Tech has created a situation where their employees and their families will never be free from risk during their lifetime.

42. In addition, Plaintiffs, Employees and anyone on their tax returns in the past or future will be at risk of identity theft for the rest of their lives, requiring constant diligence and monitoring.

Upon information and belief, other Employees have suffered harm because of the Data Breach in addition to fraudulent tax returns. Such harm includes, but is not necessarily limited to, Employees who learned that cybercriminals have applied for educational loans and financial aid using their names and their Social Security numbers.

### NEO Tech's Inadequate Response to Protect the Employees

43. NEO Tech has failed to provide adequate compensation for the Employees due to its negligence. To date, NEO Tech has offered Employees just two years of identity theft protection through the Experian ProtectMyID service.  Even if an Employee accepts the ProtectMyID service, it will not provide Employees any compensation for the costs and burdens associated with the fraudulent tax returns that were filed prior to an Employee signing up for ProtectMyID.  NEO Tech has not offered Employees any assistance in dealing with the IRS or state tax agencies other than to provide contact information in a letter on January 31, 2017. They also recommended that employees file their tax returns as soon as possible on February 24, 2017 almost one month after the breach.  NEO Tech has not offered to reimburse Employees for the costs – current and future – incurred because of falsely filed tax returns.

44. NEO Tech offered ProtectMyID service through Experian. This service is inadequate to protect the Employees from the threats they face.  It does nothing to protect against identity theft.  Instead, it only provides a measure of assistance after identity theft has been discovered. For example, ProtectMyID only monitors Employees' credit reports – but fraudulent activity, such as the filing of a false tax return, may not appear at all on a credit report.  ProtectMyID

does not provide real time monitoring of Employees' credit cards and bank account statements.  Employees must pay extra for that service.  Although ProtectMyID offers up to $1 million of identity theft insurance, the coverage afforded is limited and often duplicative of, or inferior to, basic protections provided by banks and credit card companies.

45. Many websites that rank identity protection services are critical of ProtectMyID.  NeXT Advisor ranks ProtectMyID at the bottom of comparable services, noting that it "lacks in protection; only includes Experian credit report monitoring; 7-day trial for $1 with enrollment; credit score and other credit reports cost extra."[1]

### CLASS ALLEGATION

46. Plaintiffs bring these claims pursuant to Fed. R. Civ. P. 23(a), (b)(2) on behalf of a class of all other persons similarly situated.

47. While reserving the right to modify or amend the class definition, Plaintiffs propose to define the Plaintiff Class as follows:

> All current and former employees of NEO Technology Solutions, as defined herein, as well as the spouses and/or other immediate family members of such employees, whose personal identifying data, including without limitation name, address, social security number, and/or employment compensation for calendar year 2016, was compromised by the release of such personal identifying data by NEO Technology Solutions on or about January 27, 2107

> NEO Technology Solutions means NEO Technology Solutions whether doing business as NEO Tech, OnCore Manufacturing and /or Natel Engineering, together with any subsidiaries or affiliates thereof.

> Specifically excluded from the Plaintiff Class are: all judges assigned to hear any aspect of

---

[1] BestIDtheftCompanys.com ranks    ProtectMyID at No 30 with a score of just 4.4 out of 10 (and a "User Score" of just 1.3).

this litigation, and their respective immediate families.

48. For purposes of claims arising under the law of California and Massachusetts, respectively, Plaintiffs propose to define the following sub-classes:

> For purposes of claims arising under the law of California, the California Sub-Class consists of all members of the Plaintiff Class who were residents of California at any time from January 1, 2016, through January 31, 2017.

> For Purposes of claims arising under the law of Massachusetts, the Massachusetts Sub-Class consists of all members of the Plaintiff Class who were resident of Massachusetts at any time from January 1, 2016, through January 31, 2017.

49. The members of the Plaintiff Class and the respective sub-classes can be identified by business records that are within Defendants' possession, custody or control.

50. The Plaintiff Class, which consists of more than 1,400 persons residing in several different and no-contiguous states, is so numerous and geographically dispersed to make joinder of all members impractical.

51. There are questions of law and fact that are common to the members of the Plaintiff Class, including (a) whether and, if so, to what extent NEO Tech had a duty to protect the personal identifying data of its employees, including such employees' social security numbers and employment compensation, (b) whether NEO Tech breached its duty to protect the personal identifying data of its employees by releasing such data on or about January 27, 2017 , and (c) whether Plaintiffs and the other members of the Plaintiff Class are entitled to actual damages, punitive damages, restitutions, pre-judgement and post-judgement interest, attorneys' fees and costs and/or any other form of remedy or relief.

52. There are questions of law and fact that are common to the members of the California Sub-Class, including (a) whether NEO Tech's acts, omissions and conduct relating to the personal information of its employees resident in California constitute unfair, unlawful and/or fraudulent business practices in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §17200, et seq. and (b) whether NEO Tech's acts, omissions and conduct relating to the personal information of its employees resident in California constitute one or more violations of California Civil Code §1708.815(b).

53.  There are question of law and fact that are common to the members of the Massachusetts Sub Class, including (a) whether NEO Techs' acts, omissions and conduct relating to the personal information of its employees resident in Massachusetts violated the duties and standards for protecting personal information as set out in 201 Code Mass. Reg. §§ 17.01-17.04.

54. For purposes of Rule 23 (b)(2), Plaintiffs allege that Defendants acted or refused to act on grounds that apply generally to all members of the Plaintiff Class, and to all members of the respective sub-classes, making final declaratory or injunctive relief appropriate for all such members.

55. For purposes of Rule 23(b) (3) the common questions of law and fact predominate over any question affecting only individual class members. The only individual questions concern the computation of the relief to be afforded each class member.

56. Plaintiffs' claims are typical of the claims of the class members, including the members of the respective sub-classes, as they arise out of NEO Tech's uniform wrongful conduct with

respect to personal information data of all employees.

57. Plaintiffs will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to the claims stated herein. Plaintiffs are similarly situated with, and have suffered similar injuries as, the members of the class they seek to represent. Plaintiffs feel they have been wronged, wish to obtain redress of the wrong, and desire the Defendants be prevented from unlawfully releasing employees' personal information in the future. To that end Plaintiffs have retained counsel experienced in class action cases. Neither the representative Plaintiffs nor counsel has any interest that might cause them to not vigorously pursue this action.

58. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, in that (a) the damages sustained by any individual class member are so small as to make individualized litigation economically impracticable, (b) individualized litigation presents the potential for inconsistent or contradictory judgements, and increases the delay and expense to all parties, (c) Plaintiffs are unaware of any litigation already initiated by or on behalf of any member of the proposed Plaintiff Class concerning  NEO Tech's release of the 2016 W-2 Data, and (d) the difficulties likely to be encountered in the management of a class action are not great.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

(Negligence)

59. Plaintiffs reallege and incorporate by reference all prior allegations as if fully set forth herein.

60. This cause of action is brought on behalf of all the sub-classes.

61. The Employees are or were employed by NEO Tech and were issued 2016 Form W-2 from NEO Tech or for whom NEO Tech had 2016 Form W-2 data.  As a condition of their employment, the Employees were obligated to provide NEO Tech with certain personal information, including their names, addresses, and Social Security numbers.  In addition, the Employees provided NEO Tech with personal information of other individuals, such as their spouses and children. Such information was provided, *inter alia*, as information concerning beneficiaries for retirement plans, health insurance coverage or other insurance plans.

62. NEO Tech   had full knowledge of the sensitivity of the W-2 and social security information and the types of harm that Plaintiffs and class members could and would suffer if the W-2 and social security were wrongfully disclosed. NEO Tech had a duty to Plaintiffs and each class member to exercise reasonable care in holding, safeguarding and protecting that information.  Plaintiffs and the class members were the foreseeable victims of any inadequate safety and security practices.  Plaintiffs and the other class members had no

- 18 - -

ability to protect their data that was in NEO Tech's possession.

63. NEO Tech's duty to the Plaintiffs and other class members included, *inter alia*, establishing processes and procedures to protect the W-2 information from wrongful disclosure and training employees who had access to the W-2 information as to those processes and procedures. NEO Tech had a duty to insist that the W-2 information was encrypted as required by Massachusetts and California statutes and to insist that all employees used the encryption software. NEO Tech is a significant player in the technology industry, and NEO Tech, its officers, directors and management are all aware of the risks associated with the wrongful disclosure of W-2 information and the threats to employees posed by hackers, scammers, and other cybercriminals.

64. In addition, NEO Tech had a duty to timely and adequately disclose to Plaintiffs and the other class members that their W-2 information had been compromised.  Such timely disclosure was necessary to allow Plaintiffs and the other class members to (i) purchase identity protection services; (ii) monitor their bank accounts, credit cards and other financial accounts; and (iii)   take other steps to protect against identity theft and the fraudulent use of their W-2 information by third      parties.

65. NEO Tech admitted that Plaintiffs' and the other class members' W-2 information was wrongfully disclosed because of the Data Breach.

66. As a result of NEO Tech's negligence, Plaintiffs and the class members have suffered and will continue to suffer damages and injury including, but not necessarily limited to: a) out-of-

pocket costs and lost wages associated with addressing false tax returns filed with the IRS and state tax agencies; b) increased future out of pocket costs and lost wages in connection with preparing and filing tax returns; c) out-of-pocket costs and lost wages associated with procuring identity protection and restoration services; d) out-of-pocket costs due to inability to access tax refunds in a timely fashion e) in the event of future identity theft, out-of-pocket costs and lost wages associated with repairing credit, reversing fraudulent charges, and other harms; and f) lost productivity and enjoyment as a result of time spent monitoring, addressing and correcting future consequences of the Data Breach.

67. NEO Tech breached its duty to Plaintiffs and the class members by failing to maintain proper security measures, policies and procedures, and training. NEO Tech failed to timely notify Plaintiffs and the class members of the Data Breach. Plaintiffs and the class members have been harmed as a direct and proximate result of NEO Tech's negligence. Plaintiffs and the class members will continue to be harmed as a direct and proximate result of NEO Tech's negligence.

68. Plaintiffs and the class members are entitled to money damages for all out of pocket costs caused by NEO Tech's negligence. Plaintiffs also seek reasonable attorneys' fees and costs under the applicable law, including Federal Rule of Civil Procedure 23 and Massachusetts Code of Civil Procedure § 1021.5.

**SECOND CAUSE OF ACTION**
**Violation of: 15 USC Sec. 45 (a)(1), Mass. 201 CMR 17.00**
**Massachusetts General Laws Chapter 93A, Section 9, Chapter 93H**
**Unfair Competition Law, Cal. Bus. & Prof. Code § 17200**
**Cal. Civil Code § 1798. 81, § 1798.82**

69. Plaintiffs reallege and incorporate by reference all prior allegations as if fully set forth herein.

70. This cause of action is brought on behalf of all the classes.

71. NEO Tech engaged in unfair, unlawful and fraudulent business practices in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. ("UCL"), Cal. Civil Code § 1798.81, §1798.82 and Massachusetts General Laws Chapter 93A Section 9, Massachusetts General Laws Chapter 93H and 201 CMR 17.00. NEO Tech's acts, omissions and conduct constitute unfair, unlawful and fraudulent business practices under both California and Massachusetts statutes. (See 93A Demand Letters, attached as Exhibit 2)

72. NEO Tech's practices were unlawful and in violation of Cal. Civil Code section 1798.81.5(b) because NEO Tech failed to take reasonable measures in protecting Plaintiffs' and the class members' W-2 information.

73. NEO Tech's practices were unlawful and in violation of Mass. 201 CMR 17.00 and MGL 93H because the social security information of Massachusetts residents was not encrypted as required.

74. NEO Tech's practices were also unlawful and in violation of M.G.L. 93A § 9 because NEO Tech unreasonably delayed informing Plaintiffs and the class members about the breach of

security after NEO Tech knew the breach occurred.

75.  NEO Tech's acts, omissions, and conduct also constitute "unfair" business acts or practices because they offend public policy and constitute immoral, unethical, and unscrupulous activities that caused substantial injury, including Plaintiffs and class members. The gravity of harm resulting from NEO Tech's conduct outweighs any potential benefits attributable to the conduct and there were reasonably available alternatives to further NEO Tech's legitimate business interests. NEO Tech's conduct also undermines public policy as reflected in statutes such as the Information Practices Act of 1977, Cal. Civ. Code § 1798, et seq., and the California Customer Records Act, and MGL 93H and 201CMR 17.00 which were enacted to protect individuals' personal data and ensure that entities who solicit or are entrusted with personal data use reasonable security measures.

76.  NEO Tech had exclusive knowledge about the extent of the Data Breach, including during the days and weeks following the Data Breach.

77. Plaintiffs and the class members would have insisted that their W-2 information be more securely protected and removed from NEO Tech's systems promptly after their employment ended. They also would have taken additional steps to protect their identities and to protect themselves from the sort of harm that could flow from NEO Tech's lax security measures. But for NEO Tech's misrepresentations and omissions, Plaintiffs and the class members would not be experiencing identity theft, identity fraud, and/or the increased risk of harm they are now facing, because of the Data Breach. But for the fact that NEO Tech withheld information regarding the Data Breach, and subsequently disclosed it in an inconsistent and

lax manner, Plaintiffs and the class members would have taken more immediate steps to protect their identities and would have been able to minimize the harm they suffered because of the Data Breach.

78.  As a direct and proximate result of NEO Tech's unlawful, unfair, and fraudulent business practices as alleged herein, Plaintiffs and members of the classes have suffered injury in fact.  Plaintiffs and the classes have been injured in that their social security and financial information has been compromised, subject to identity theft, identity fraud, and/or is at risk for future identity theft and fraudulent activity on their financial accounts.  Class members have also lost money and property that would not have been lost but for NEO Tech's unlawful and unfair conduct.

79. As a direct and proximate result of NEO Tech's unlawful, unfair, and fraudulent business practices as alleged herein, Plaintiffs and class members already suffer from identity theft, identity and financial fraud, and/or a continuing increased risk of identity theft and financial and medical fraud due to the compromise, publication, and/or unauthorized use of their financial and social security information.  Plaintiffs and the class members have also been injured by, among other things: (1) the loss of the opportunity to control how their social security information is used; (2) the diminution in the value and/or use of their social security and personnel information entrusted to NEO Tech for the purpose of deriving employment from NEO Tech and with the expectation that NEO Tech would safeguard this

information against theft and not allow access and misuse of their social security and

personnel information by others; (3) the compromise, publication, and/or theft of their social

security and personnel  information; (4) out-of-pocket costs associated with the prevention,

detection, and recovery from identity theft and/or unauthorized use of financial and medical

accounts; (5) lost opportunity costs associated with effort expended and the loss of

productivity from addressing and attempting to mitigate the actual and future consequences

of the breach, including but not limited to efforts spent researching how to prevent, detect,

contest and recover from identity and health care/medical data misuse; (6) costs associated

with the ability to use credit and assets  frozen or flagged due to tax fraud  and  credit

misuse, including complete credit denial and/or increased costs     to use credit, credit scores,

credit reports and assets; (7) unauthorized use of compromised social security and personal

information to open new financial and/or health care or medical accounts; (8) tax fraud

and/or other unauthorized charges to financial, health care or medical accounts and

associated lack of access to funds while proper information is confirmed and corrected; (9)

the continued risk to their identity information and the identity  of their family members and

designated beneficiaries of employment-related benefits through NEO Tech, which remain

in NEO Tech's possession and are subject to further breaches so long as NEO Tech fails to

undertake appropriate and adequate measures to protect the personnel information in its

possession; and (10) future costs in terms of time, effort and money that will be expended to

prevent, detect, contest, and repair the impact of the social security and personnel

information  compromised as a result of the Data Breach for the remainder of the Plaintiffs' and the class members' lives and the lives of their families and their designated beneficiaries of employment-related benefits through NEO Tech.

80.  Because of NEO Tech's violations of the UCL, Plaintiffs and the class members are entitled to injunctive relief, including, but not limited to an order that NEO Tech: (1) engage third party security auditors/penetration testers as well as internal security personnel to conduct testing consistent with prudent industry practices, including simulated attacks, penetration tests, and audits on NEO Tech's systems on a periodic basis; (2) engage third party security auditors and internal personnel to run automated security monitoring consistent with prudent industry practices; (3) audit, test, and train its security personnel regarding any new or modified procedures; (4) purge, delete and destroy, in a secure manner, employee data not necessary for its business operations; (5) conduct regular database scanning and security checks consistent with prudent industry practices; (6) periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach consistent with prudent industry practices; (7) receive periodic compliance audits by a third party regarding the security of the computer systems NEO Tech uses to store the social security and personnel information of its current and former employees; (8) meaningfully educate its current and former employees about the threats they face as a result of the loss of their social security information and other W-2 information to third parties, as well as the steps they must take to protect themselves; and (9)

provide ongoing identity theft protection, monitoring, and recovery services to Plaintiffs and class members, as well as to their dependents and designated beneficiaries of employment-related benefits through NEO Tech for the next 15 years at a minimum.

81. Because of NEO Tech's unlawful, unfair, and fraudulent business practices, Plaintiffs and the class members are entitled to relief, including attorneys' fees and costs, restitution, declaratory relief, and a permanent injunction enjoining NEO Tech from its unlawful and unfair practices. Plaintiffs also seek reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23, Massachusetts Rules of Civil Procedure Rule 23 and California Code of Civil Procedure § 31021.5.

## THIRD CAUSE OF ACTION
### (Declaratory Judgment)

82. Plaintiffs reallege and incorporate by reference all prior allegations as if fully set forth herein.

83. This cause of action is brought on behalf of all the classes. As set forth above, Plaintiffs and the class members have valid claims against NEO Tech for negligence and violations of California and Massachusetts statutes regarding the protection of identify information. An actual controversy has arisen in the wake of NEO Tech's Data Breach regarding NEO Tech's current obligations to provide reasonable data security measures to protect the 2016 W-2 information of Plaintiffs and the class members.

84. Plaintiffs seek a declaration that to comply with its existing obligations, NEO Tech must implement specific additional, prudent industry security practices, as outlined below, to

provide reasonable protection and security to the social security and other W-2 information of Plaintiffs and the class members. Specifically, Plaintiffs and the class members seek a declaration that (a) NEO Tech's existing security measures do not comply with its obligations, and (b) that to comply with its obligations, NEO Tech must implement and maintain reasonable security measures on behalf of Plaintiffs and the Nationwide Class, including, but not limited to: (1) engaging third party security auditors/penetration testers as well as internal security personnel to conduct testing consistent with prudent industry practices, including simulated attacks, penetration tests, and audits on NEO Tech's systems on a periodic basis; (2) engaging third party security auditors and internal personnel to run automated security monitoring consistent with prudent industry practices; (3) auditing, testing, and training its security personnel regarding any new or modified procedures; (4) purging, deleting and destroying, in a secure manner, employee data not necessary for its business operations; (5) conducting regular database scanning and security checks consistent with prudent industry practices; (6) periodically conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach consistent with prudent industry practices; (7) receiving periodic compliance audits by a third party regarding the security of the computer systems NEO Tech uses to store the personal information of its current and former employees; (8)meaningfully educating its current and former employees about the threats they face as a result of the loss of their 2016 W-2 information to third parties, as well as the

steps they must take to protect themselves; and (9) providing ongoing identity theft

protection, monitoring, and recovery services to Plaintiffs and class members for at least

fifteen years as well as to their dependents and designated beneficiaries of employment-

related benefits through NEO Tech.

85. Each Plaintiff and class member is entitled to a declaration of rights stating that NEO Tech is

obligated, pursuant to terms established by the Court, to reimburse said individuals for all

future harm caused by the Data Breach.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and on behalf of the proposed classes, request that the Court:

a. Certify this case as a class action, appoint Plaintiffs as class representatives and appoint

Plaintiffs' counsel to represent the classes;

b. Find that NEO Tech breached its duty to safeguard and protect Plaintiffs' and the class

members' 2016 W-2 information which was compromised in the Data Breach;

c. Award Plaintiffs and Class members appropriate relief, including actual

damages, punitive damages, and statutory damages;

d. Award equitable, injunctive, declaratory relief as appropriate;

e. Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting

this action;

f. Award pre-judgment and post-judgment interest as prescribed by law; and

g. Grant additional legal or equitable relief as the Court may find just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a trial by jury on all issues so triable.

Dated: August 8, 2017

Respectfully submitted,

 /s/ Cristina P Carrier
Cristina P. Carrier, PC
1380 Main St, Suite 413
Springfield, MA 01103
Telephone:(877)628-7694
Facsimile:(413) 895-5352
E-mail: cristina@cristinapcarrier.com

Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

**I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non registered participants on August 2017.**

**/s/Cristina P Carrier**