Cristina P. Carrier, Esq.
1380 Main St, Suite 413
Springfield, MA 01103
Telephone: (877) 628-7694
 Facsimile: (413) 895-5352
E-mail: cristina@cristinapcarrier.com
*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS
## Case No.: 3:17-CV-3011

| | |
|---|---|
| KRIS PORTIER, EDWARD SNELGROVE | ) |
| ANTONIO BATALHA, KRISTINE TANSIL | ) |
| JOHN TANSIL, JOSE RIVAS, REINALDO | ) |
| PEREZ, RICHARD PEASE,  STEWART | ) |
| SCOLES and  MILTON MANZANO, | ) |
| INDIVIDUALLY AND ON BEHALF OF | ) |
|  All similarly situated employees and family | ) |
|  members, | ) |
| Plaintiffs, | ) |
| v. | ) |
| NEO Technology Solutions dba/ | ) |
| OnCore Holdings LLC, | ) |
|  OnCore Manufacturing, LLC, | ) |
| Natel Engineering Co, Inc. | ) |
| NEO Tech, North America | ) |
| NEO Tech Inc. and any all other names used | ) |
| By NEO Technology Solutions | ) |
| Defendants | ) |

## SECOND AMENDED COMPLAINT

1. Kris Portier, Edward Snelgrove, Antonio Batalha, Kristine Tansil, John Tansil, Jose Rivas, Reinaldo Perez, Richard Pease, Stewart Scoles and Milton Manzano (collectively, "Plaintiffs"), individually and on behalf of all other similarly situated employees and family members, file this action against the defendants, NEO Technology Solutions("NEO Tech"), OnCore Manufacturing, LLC("OnCore"), Natel Engineering Co, Inc. ("Natel") (collectively defendants") to recover damages caused by NEO Tech's negligent and unlawful release of the IRS Form W-2 Wage and Tax Statement date for calendar year 2016 relating to approximately 1400 of the Defendant's employees and their families.

## INTRODUCTION

2. For purposes of income tax reporting, the Internal Revenue Service requires employers to record and report sensitive personal identification information, including names, addresses, earnings and Social Security numbers, of all employees on an annual basis. The information relating to each individual employee is reported to respective employees on an IRS Form W-2 Wage and Tax Statement, while the Form W-2 data for all employees is compiled and reported to the IRS as an electronic database. Form purposes of this complaint, such database is referred to as "W-2 Data".

3. On or about January 27, 2016, a Vice-President of NEO Tech, Zareen Mohta (hereinafter "Mohta"), an employee, responded to an Internet "phishing" scam by

forwarding to unknown cybercriminals the calendar year 2016  W-2 data and password hints for the data, for all of NEO Tech's North American Division Employees, including but not limited to those employees of  NEO Tech, OnCore and/or Natel Engineering Co, Inc. employees in North America who were employed for any payroll period during calendar year 2016.

  4. On January 27, 2017, Mohta breached NEO Tech's duty of care to its employees and their family members under common law negligence and Massachusetts, and California Statutes. "A basic principle of Massachusetts law is that ordinarily everyone has a duty to refrain from acts which will unreasonably will expose others to a risk of harm." Yabukowicz v. Paramount Pictures Corp., 404 Mass. 624, 536 N.E.2d 1067, 1070 (1989).

  5. This duty of care was owed to the effect employees by NEO Tech as all employees were required to entrust their social security and other W-2 information to Defendant as a prerequisite for employment.

  6. On information and belief, the released 2016 W-2 Data related to approximately 1400 current and former employees, some of whom were employed in Massachusetts, Ohio and California.

  7. The 2016 W-2 Data file, was not encrypted but merely password protected, in violation of Massachusetts Statute MGL Chapter 93H and 201CMR 17.04.

8.  Mohta was negligent in her duty as Vice-President of Human Resource <u>twice</u> responded to subsequent requests of the cybercriminals for the password to the 2016 W-2 Data file by providing a password hint, the second stronger than the first.

9.  Prior to the unlawful release of the 2016 W-2 Data on or about January 27, 2017, NEO Tech had experienced other employee data breaches, including one involving the release of employees' health insurance and other benefit information. NEO Tech's information technology (IT) department had urged the use of encryption software to protect such data, but members of NEO Tech's upper management, including Mohta, willfully declined to act on that recommendation in violation of Massachusetts and California state statutes.

10. On information and belief, NEO Tech's upper level management personnel met to discuss the situation within hours of the release of the 2016 W-2 Data. NEO Tech's upper management employees had knowledge of the release and could protect their own personal finances, but did not provide the same opportunity to  the remainder of the 1400 employees.

11. Instead, NEO Tech did not inform other employees of the breach until, at the earliest, January 31, 2017 and as late as two weeks later in the case of former employees, thereby allowing the cybercriminals time to make unlawful use of the W-2 Data.

12.This delay constitutes a breach in NEO Tech's duty of care and statutory obligation to protect the W-2 information of its employees Despite assertions to the contrary, NEO Tech did not report the incident to local police, the Attorney General's office the FBI or the Internal Revenue Service, as is required by law in California and Massachusetts, until at least ten days after the wrongful release, thereby allowing the cybercriminals additional time to avoid detection and to use the employees' W-2 Data.

13.Within 24 hours after the release of the W-2 Data and the password hints supplied by Mohta, the cybercriminals exploited NEO Tech's wrongful actions by filing fraudulent federal and state tax returns in the names of employees.(See Parties infra.) Employees have since learned that the cybercriminals filed fraudulent *joint* tax returns using not only the employee's Social Security number, but also the employee's spouse's Social Security number. In addition, the cybercriminals have filed for education financial assistance under Federal aid programs (FAFSA) programs using the names of children or affected employees.

14.The named parties have continued to experience attempts at fraudulent credit applications as recently as late 2018. (See Parties infra)

15.Each of the named employees and those similarly situated are members of a class they were required to participate in as a condition of their employment. They were required to provide their W-2 information to NEO Tech.

16. Employees and their family members who know that their W-2 information has been wrongly utilized by others have been forced to take leave, pay for pre-arranged expenditures, such as but not limited to, summer camp fees and home/car repairs, with credit cards or loans having not had immediate access to their tax returns, pay tax professionals to rectify fraudulent tax returns, engage credit monitoring services to protect their identity and credit, and/or have sought legal counsel to respond to attacks on their credit and tax status.

17. Employees who are not yet aware of any wrongful use of their personal data are now, and for the rest of their lives will be, at a heightened risk of identity theft. Many such employees have suffered, and will continue to suffer out-of-pocket costs to protect their identities and if necessary repair their credit rating.

18. NEO Tech offered two years of Credit protection which expired on or about March of 2019. The employees affected are now financially responsible for protecting their credit into the future where they face imminent risk of future fraudulent activity.

19. By this action, Plaintiffs seek to hold Defendants responsible for the harm caused by NEO Tech's negligent breach of their duty of care to the Defendant's and violation of state statutes.

## JURISDICTION AND VENUE

20. This Court has jurisdiction over the claims in this action pursuant to 28 U.S.C. §

1332(d) because the amount in controversy exceeds $5 million, exclusive of interest and costs. Identity protection averages $30 to $40 per month depending on the company and amount of coverage. The plaintiffs will have to protect themselves for the remainder of their lives. A 20 year average yields costs to 1400 plaintiffs of between 10,500,000 and 13,3000 dollars..

21. NEO Tech has reached into Massachusetts and Ohio to conduct business, in addition to California where it is headquartered. The members of the proposed classes are citizens of these states.

22. This Court has personal jurisdiction over NEO Tech because NEO Tech maintains two significant places of business in this District, is registered to conduct business in Massachusetts, and has sufficient minimum contacts with Massachusetts.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because NEO Tech's subsidiary OnCore/Natel resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

### PARTIES AND RELATED ENTITIES

#### Named Plaintiffs

24. Plaintiff Kris Portier is a resident of Massachusetts and an Employee of OnCore/ NEO Tech.  NEO Tech informed Mr. Portier on January 31, 2017 at a meeting in Springfield, Massachusetts that NEO Tech had released his Form W-2 data on or about

January 27, 2017. Following the breach on January 27, 2017 Mr. Portier incurred significant financial harm. His income tax return was immediately stolen after January 27, 2017. In 2017 he incurred $516 in lost wages which reflects the 30 hours spent setting up credit monitoring, meeting with the Internal Revenue Service, data entry for credit card companies, communication with creditors and meetings with co-workers to discuss options for relief. These hours include uncompensated break and lunch times and his own free time which but for NEO Tech's negligence would not have required him to "work" at meeting with police, the IRS and spending hours on the telephone to prevent and recover from his loss. Due to the fact that his income tax return was stolen, Mr. Portier was forced to pay for his daughter's summer camp on a credit card. Each month from February 2017 to date, Mr. Portier has paid 28% interest on a $2100 credit card bill. Mr. Portier is no longer eligible for Identity theft protection from NEO Tech despite the continuing risk from the resale of his W-2 information of the "dark web". This risk will not diminish and may affect his ability to buy a home, obtain credit, college loans,  and obtain social security benefits because of misuse of his social security number.

25.Plaintiff Edward Snelgrove is a resident of Massachusetts. Mr. Snelgrove was employed by OnCore/NEO Tech in 2016 in Springfield, Massachusetts. Mr. Snelgrove first became aware that NEO Tech had released his Form W-2 data on or about January

27, 2017 through his duties in the IT department. Edward Snelgrove incurred $2400 in lost wages, which reflects the 40 uncompensated hours spent setting up credit monitoring, data entry for credit card companies, communication with creditors and banks and meetings with co-workers to discuss options for relief. These hours include uncompensated break and lunch times and his own free time which but for NEO Tech's negligence would not have required him to "work" at meeting with police, the IRS and spending hours on the telephone to prevent and recover from his loss. Mr. Snelgrove has incurred a monthly fee of $30 since April of 2017 when he began to pay for Protect My ID credit monitoring service. He continues to incur this cost and will continue for the next 20 years. Assuming no increase in fees he will incur an additional $7500 in costs to protect himself for NEO Tech's negligence. This risk will not diminish and may affect his ability to buy a home, obtain credit, college loans, and obtain social security benefits because of misuse of his social security number.

26. Plaintiff Antonio Batalha is a resident of Massachusetts and a former Employee of Oncore / NEO Tech in 2016. NEO Tech informed Mr. Batalha by mail on or about February 10, 2017 that NEO Tech had released his Form W-2 data on or about January 27, 2017. Mr. Batalha incurred $1575 in lost wages which reflects 15 hours uncompensated hours spent making phone calls to The Massachusetts Attorney General, the Federal Trade Commission, Credit bureaus, The Massachusetts

Department of Revenue and H&R Block and IRS fraud alert. He also spent at least an hour at the police department in Chicopee MA. On 4/17/2018 a cyberthief attempted to open a credit card in his name and was caught by Experian. The risks to Mr. Batalha's credit will not diminish and may affect his financial future including but not limited to his ability to buy a home, obtain credit, college loans, and obtain social security benefits because of misuse of his social security number.

27.Plaintiff John Tansil is a resident of California and is a former Employee of Oncore/NEO Tech. He was laid off in May 2016. NEO Tech informed Mr. Tansil on or about February10, 2017 that NEO Tech had released his 2016 Form W-2 data on or about January 27, 2017. Mr. Tansil incurred to date 98 hours of uncompensated time at $48 per hour (his current pay rate) totalling $4714 in lost wages. He has been forced to purchase Identity/ Credit protect for $40 per month. He estimates he will need the protection for another 20 years. His cost will be $9500 not including the bank fees paid to Wells Fargo beginning on or about February 11, 2017. He was forced to lock down his lines of credit. As a result he has to pay $10 each time he wants to use his credit. As of March 2019 he continues to incur these costs totalling $288 to date. He calculates the recurring cost to be approximately $1350 per year which includes his time which is uncompensated or used vacation time and actual fees as described above. This risk will not diminish and may affect Mr. Tansil's ability to buy a home, obtain credit,

loans, and obtain social security benefits because of misuse of his social security number.

28.Plaintiff Jose Rivas is a resident of Massachusetts and an Employee of Oncore/ NEO Tech. NEO Tech confirmed to Mr. Rivas that NEO Tech had released his Form W-2 data on or about January 27, 2017 at a meeting on January 31, 2017. Mr. Rivas incurred $270 in lost wages, which reflects the 18 hours spent setting up credit monitoring, entering data, and responding to inquiries from creditors. This risk will not diminish and may affect his ability to buy a home, obtain credit, college loans, and obtain social security benefits because of misuse of his social security number. Mr. Rivas' risk will not diminish and may affect Mr. Rivas's ability to buy a home, obtain credit, loans, and obtain social security benefits because of misuse of his social security number.

29.Plaintiff Kristine Tansil is a resident of California and the wife of Plaintiff John Tansil. She files her taxes jointly with her husband. Access to her husband's social security number gains access to their tax records and Ms. Tansil's social security number exposing her information to ongoing fraud. Ms. Tansil incurred $90 in Wells Fargo bank fees and has purchased Identity/Credit protection for $40 per month. This risk will not diminish and may affect his ability to buy a home, obtain credit, college loans, and obtain social security benefits because of misuse of his social security

number.  This risk of future harm will not diminish and may affect Mr. Tansil's ability to buy a home, obtain credit,  loans,  and obtain social security benefits because of misuse of his social security number.

30.Plaintiff Frank Roda is a resident of Massachusetts and a former Employee of Oncore/NEO Tech. NEO TEch informed ROday by mail on or about February 10, 2017  that NEO TEch had released his W-2 data on or about January 27,2 017. MR. Roda incurred $903 in lost wages which reflects the 43 hours spent setting up credit monitoring entering all information required to protect his credit card and bank accounts  and responding to queries from government agencies including the Internal RevenueService when his tax return for 2017 was diverted. .

31.Plaintiff Milton Manzano is a resident of Massachusetts and an Employee of Oncore/NEO Tech. NEO Tech informed Mr. Manzano at a meeting on January 31, 2017 that NEO Tech had released his Form W-2 data on or about January 27, 2017. Mr. Manzano gave up his uncompensated lunch time and break time from January 27, 2017 on at least five occasions to check his credit, his tax returns and bank accounts and report the fraud.  This risk will not diminish and may affect his ability to buy a home, obtain credit, college loans,  and obtain social security benefits because of misuse of his social security number. The exact amount of his lost wages may be calculated by using his rate of pay in 2017. The  potential  risk  to Mr. Manzano will

not diminish and may affect Mr. Tansil's ability to buy a home, obtain credit, loans, and obtain social security benefits because of misuse of his social security number.

32.Plaintiff Renaldo Perez is a resident of Massachusetts. Mr. Perez was employed by OnCore/NEO Tech in 2016 in Springfield, Massachusetts. Mr. Perez suffered the theft of his identity as a direct result of his information being released from NEO Tech. He had to call a number of his personal creditors. He filled out a police report. He had to notify both the Massachusetts Department of Revenue, the United States Internal Revenue Service and the Connecticut State Department of Revenue that his information was in the hands of a third party. Then Mr. Perez had to wait for the Internal Revenue Service to give Mr. Perez a personal "PIN number" so the IRS could accept his tax filing as the authentic document from Mr. Perez. Mr. Perez found the additional burden of making these notifications can carrying on negotiations with these entities personally difficult and time consuming. Mr. Perez estimates that these efforts consumed his uncompensated personal time for a period of two weeks, from January 27, 2017 through February 1, 2017. Mr. Perez also had to take unpaid or vacation time off from work to see a tax auditor to prove that he was the actual person who file his tax return. He also had to meet with tax authorities on April 15, 2017 and again April 29, 2017, losing 16 hours of work from his new job at $16 / hour for a total of $256.00 in wages.

33. Plaintiff Stewart Scoles is currently a resident of Florida and formerly a resident of Massachusetts. Mr. Perez was employed by OnCore/NEO Tech. Mr. Scoles estimates that since the date of the NEO Tech breach of information he spent a total of from thirty to forty hours trying to resolve issues that were created for him the NEO Tech releasing his personal, protected information, including, one hours on January 31, 2017 speaking to Wells Fargo Bank; thirty minutes on January 31, 2017 speaking to USAA Credit Card Servicing; one hour on March 5, 2017 filling out a police report with the Ware, MA police (mileage: eight miles) and one hour at the local office of the United States Internal Revenue Service on April 25, 2017 (mileage: thirty miles). Mr. Scoles believes since the date of the NEO Tech breach of information he spent about $100 so far untabling issues created by NEO Tech sharing his personal financial information with cyber thieves. Additionally, he was required to make two round trips totalling sixty miles to the Aon Tax Service on April 1, 2017. Someone submitted a fake 2016 tax return using Mr. Scoles' name and social security number. This tax return was rejected by the Internal Revenue Service. His tax return was delayed causing him to incur additional expenses.This risk will not diminish for Mr. Scole and may affect his ability to buy a home, obtain credit, college loans, and obtain social security benefits because of misuse of his social security number. Mr. Scoles estimates that he spent about 35 hours in total talking on the phone, visiting institutions and

mailing documents to resolve the fallout of Neo Tech's negligence. At his last salary rate, an hour of his time was worth about $37.00. Therefore he spent time amounting to $1295.00 in value.

34.Plaintiff Richard Pease is a resident of Massachusetts. Mr. Pease was employed by OnCore/NEO Tech. Mr. Pease Estimates that since the date of the NEO Tech breach of information he spent a total of two thousand and thirty two dollars and 62 cents ($2031.62) trying to resolve issues that were created for him when NEO Tech released his personal, protected information, including, four hundred, forty-nine dollars and 85 cents ($449.85) on identity protection services from LifeLock; three hundred and ten dollars with CitiBank MasterCard and fifty three dollars and 79 cents ($53.29), also with MasterCard. Additionally, the loss prevention department of MasterCard tried to force Mr. Pease to accept and pay eleven thousand dollars ($11,000.00) in false charges which had been applied to Pease's Master Card account. Although he is retired, Mr. Pease valued the time that he spent trying to resolve the $11,000.00 fraudulent claim on his MasterCard at his last hourly pay rate. Thus, Mr. Pease incurred a $310.00 loss having spent ten (10 hours on the phone with the loss prevention department and another three hours or $93.00 of his time doing research on his Mastercard and bank statements. Mr. Pease spent $30.00 in postage sending correspondence return receipt requested to Mastercard. He spent at least two hours or

$62.00 of his time meeting with counsel. After all this work to untangle the effects of NEO Tech releasing his personal information onto the internet, Mr. Pease had to delay filing for his Social Security benefits for four (4) months. A year later, he still cannot look up his Social Security benefit status online and social security cannot tell him why his online access to social security still remains blocked today. This risk will not diminish and may affect his ability to buy a home, obtain credit,  loans,  and obtain social security benefits because of misuse of his social security number.

### Defendant NEO Tech

35.Defendant NEO Technology Solutions is a corporation organized under the laws of the state of Delaware with its principal offices in Chatsworth, CA. NEO Tech has manufacturing and engineering locations in California, Colorado, Illinois, Massachusetts, Nevada, Ohio, Tennessee, Mexico, and China. In May 2015 NATEL Engineering and OnCore Manufacturing LLC merged to form NEO Technology Solutions following a previous merger with EPIC Manufacturing corporation. NEO stands for Natel, Epic and Oncore. In 2016 OnCore located in Massachusetts continued to pay all employees in Massachusetts. Even though employees are employed by NEO Tech and human resource issues and benefits are handled by NEO Tech, the payroll for Massachusetts employees is still paid and processed by OnCore LLC.

36.Defendant OnCore Manufacturing is a limited liability corporation organized

under the laws of the state of Delaware with its principal place of business in

Chatsworth, California and factories in Springfield and Westborough, MA.

37.Defendant Natel Engineering Company Inc. is a corporation organized under the

laws of the state of Delaware with its principal office in Chatsworth, California.

## FACTUAL ALLEGATIONS

38. In a letter dated January 31, 2017 addressed to individual employees sent by e-

mail and or distributed at group meetings, NEO Tech's CFO, Laura Siegal informed

employees that NEO Tech, had discovered that it complied with a request during a

"phishing" scam (the "Data Breach").  According to NEO Tech, the Data Breach

resulted in the release of 2016 W-2 information for approximately 1400 of its and its

affiliates' current and former employees. This included all North American OnCore

and Natel employees employed at any time in 2016.  The Form W-2 data disclosed the

Employees' names, addresses, compensation and Social Security numbers. (A copy of

the letter addressed to Pamela Van Tassell is attached as Exhibit 1.

39. NEO Tech did not inform the affected employees for four to ten days following

the breach. NEO Tech also failed to report the incident to the local police, the Attorney

General in Massachusetts or California, or the Internal Revenue Service for a period of

days or weeks.

40.Within 24 hours, the cybercriminals began to exploit the Employees' W-2

information by, *inter alia*, filing false federal and state tax returns for the named and the other 1400  Employees.  In some cases, the cybercriminals filed joint tax returns, on behalf of an Employee and his or her spouse.  In addition, the cybercriminals have applied for student financial aid using the Employee's social security numbers. The false joint tax returns used the Employee's spouse's Social Security number.  Form W-2 data does not contain the Social Security number for spouses.  The fact that the cybercriminals had obtained the Social Security number for at least some of the Employees' spouses suggests that NEO Tech disclosed in the Data Breach more information than just Form W-2 data.

  41.The cybercriminals who obtained the Employees' 2016 W-2 information may continue to exploit the data themselves and/or sell the data in the so-called "dark markets." Having obtained the Employees' and their spouses names, addresses and Social Security numbers, cybercriminals can pair the data with other available information to commit a broad range of fraudulent activities in an Employee's name, including but not limited to: obtaining employment; obtaining a loan; applying for credit cards or spending money;  filing false tax returns;  obtaining medical care; stealing Social Security and other government benefits; and  applying for a driver's license, birth certificate or other public document. This puts each of the employees at imminent risk for future harm and compromises their  financial future

42.In addition, if an Employee's or spouses' Social Security number is used to create a false identification for someone who commits a crime, the Employee and their spouse may become entangled in the criminal justice system, impairing the Employee's or spouse's or their child's ability to gain employment or obtain a loan.

43.For the rest of their lives, Plaintiffs and their families and all class members will bear a heightened risk of imminent financial harm from all manners of identity theft.

44.The cybercriminals obtained the Employees' and Third-Party Victims' information through a typical "phishing" scam. The cybercriminals sent bogus emails to the Vice President of Human Resources Zareen Mohta at NEO Tech in Fremont California on January 27, 2019 and asked for copies of all its 2016 W-2 form data. Due to negligence in training, and in the enforcement procedures and controls in place at NEO Tech, as well as a lack of encryption, Ms. Mohta complied with the cybercriminals' request and forwarded copies of all the OnCore and Natel North America Employees' W-2 data to the cybercriminals.

45.Later the same day Ms. Mohta received at least two emails requesting a password for the document that she had forwarded to the cybercriminals. Despite her knowledge of the sensitivity of the information being requested by email, and the knowledge that the information should have been encrypted, she provided them with password hints, each one more illuminating. The document was not encrypted and the cybercriminals

were then able to obtain full access to the 2016 W-2 information.

46. Ms. Mohta continues to be employed in her position as Vice-President of Human Resources.

47. Following discovery of the Data Breach, NEO Tech focused on protecting itself rather than the Employees who had been victimized. The disclosure of the information was haphazard. Some current employees received a letter from the company days later, on or about February 7, 2017, informing them that their personal information had been disclosed. Some current employees were informed about the breach at two "all hands" meetings on January 31, 2017 and February 1, 2017 where a powerpoint presentation was made and a letter was handed out and left on a table for those wishing a copy. Former employees did not receive notification from NEO Tech until sometime after January 31, 2017.  NEO Tech sent former employees a letter dated January 31, 2017 which was often not received until on or about February 10, 2017, informing them of the scam.  Many of the current and former employees absent on the days of the meetings learned of the Data Breach through alternative sources.  In all cases by the time current and former employees received notice of the Data Breach, whether on January 31, 2017 or later, many were already the victims of identity theft.

48. NEO Tech was not without warning of phishing scams.  Prior to the attack, NEO Tech had been the victim of two prior information breaches, involving health insurance

information and retirement plan information that was released, and information stolen on a laptop.  The Information Technology department monitored the system and urged the use of encryption software to no avail.

49. NEO Tech's negligence in safeguarding the Employees' was exacerbated by the fact that the company's senior management, on information and belief, reacted to the breach immediately while allowing over four days to pass before beginning to inform approximately 1400 employees.

50. NEO Tech's negligence is further exacerbated by its failure to encrypt the social security information of employees as required by Massachusetts and California statutes. Management failed to require the Vice-President to use encryption software despite its availability and despite being advised to do so by the Chief Information Officer and his staff.

51. NEO Tech has conceded its fault in the Data Breach.  NEO Tech's Chief Financial Officer wrote in a January 31, 2017 letter to employees, which was delivered by placing them on a table at a meeting on the same date, "employee wage and tax information was released to an unauthorized recipient. The information was password protected …"

52. NEO Tech's Current and Former Employees Have Been Damaged

53. The Employees were obligated to provide NEO Tech with sensitive personal

information, including their Social Security numbers. NEO Tech had a duty to protect that information against wrongful disclosure to third parties. NEO Tech failed to comply with its duties to its current and former employees and their beneficiaries by failing to implement policies and procedures to prevent cybercriminals and scammers from obtaining the Employees' W-2 information.

54.The disclosure of an individual's Social Security number puts one at great risk of future fraudulent conduct. By pairing a Social Security number with someone's name, address and, perhaps, other readily available information, an identity thief can commit a broad range of fraud, including but not limited to a) obtaining unemployment; b) obtaining a loan; c) applying for credit cards or spending money under the victim's name; d) filing false tax returns; e) obtaining medical care; f) stealing Social Security and other government benefits; and g) applying for a driver's license, birth certificate or other public document. Any of these activities can cause significant financial and emotional harm to a victim.

55.The Social Security Administration does not provide replacement Social Security numbers except in extreme cases, and through their negligence NEO Tech has created a situation where their employees and their families will never be free from risk during their lifetime.

56.In addition, Plaintiffs, Employees and anyone on their tax returns in the past or

future will be at risk of identity theft for the rest of their lives, requiring constant

diligence and monitoring. Upon information and belief, other Employees have

suffered harm because of the Data Breach in addition to fraudulent tax returns. Such

harm includes, but is not necessarily limited to, Employees who learned that

cybercriminals have applied for educational loans and financial aid using their names

and their Social Security numbers.

57.NEO Tech's Inadequate Response to Protect the Employees

58.NEO Tech has failed to provide adequate compensation for the Employees due to

its negligence. To date, NEO Tech has offered Employees just two years of identity

theft protection through the Experian ProtectMyID service. Even if an Employee

accepts the ProtectMyID service, it will not provide Employees any compensation for

the costs and burdens associated with the fraudulent tax returns that were filed prior to

an Employee signing up for ProtectMyID. NEO Tech has not offered Employees any

assistance in dealing with the IRS or state tax agencies other than to provide contact

information in a letter on January 31, 2017. They also recommended that employees

file their tax returns as soon as possible on February 24, 2017 almost one month after

the breach. NEO Tech has not offered to reimburse Employees for the costs – current

and future – incurred because of falsely filed tax returns.

59.NEO Tech offered ProtectMyID service through Experian. This service is

inadequate to protect the Employees from the threats they face.  It does nothing to protect against identity theft.  Instead, it only provides a measure of assistance after identity theft has been discovered.  For example, ProtectMyID only monitors Employees' credit reports – but fraudulent activity, such as the filing of a false tax return, may not appear at all on a credit report.  ProtectMyID does not provide real time monitoring of Employees' credit cards and bank account statements.  Employees must pay extra for that service.  Although ProtectMyID offers up to $1 million of identity theft insurance, the coverage afforded is limited and often duplicative of, or inferior to, basic protections provided by banks and credit card companies. The named Plaintiffs are paying between $30 and $40 dollars a month for credit protection totalling $360 to $480 per year. The anticipated need for coverage is a full life expectancy of approximately 20 years per person.

60.Many websites that rank identity protection services are critical of ProtectMyID. NeXT Advisor ranks ProtectMyID at the bottom of comparable services, noting that it "lacks in protection; only includes Experian credit report monitoring; 7-day trial for $1 with enrollment; credit score and other credit reports cost extra."[1]

## CLASS ALLEGATION

---

[1] BestIDtheftCompanys.com ranks    ProtectMyID at No 30 with a score of just 4.4 out of 10 (and a "User Score" of just 1.3).

61. Plaintiffs bring these claims pursuant to Fed. R. Civ. P. 23(a), (b)(2) on behalf of a class of all other persons similarly situated.

62. While reserving the right to modify or amend the class definition, Plaintiffs propose to define the Plaintiff Class as follows:

63. All current and former employees of NEO Technology Solutions, as defined herein, as well as the spouses and/or other immediate family members of such employees, whose personal identifying data, including without limitation name, address, social security number, and/or employment compensation for calendar year 2016, was compromised by the release of such personal identifying data by NEO Technology Solutions on or about January 27, 2107.

64. NEO Technology Solutions means NEO Technology Solutions whether doing business as NEO Tech, OnCore Manufacturing and /or Natel Engineering, together with any subsidiaries or affiliates thereof.

65. Specifically excluded from the Plaintiff Class are: all judges assigned to hear any aspect of this litigation, and their respective immediate families.

66. For purposes of claims arising under the laws of California and Massachusetts, respectively, Plaintiffs propose to define the following sub-classes:

67. For purposes of claims arising under the laws of California, the California Sub-Class consists of all members of the Plaintiff Class who were residents of California at

any time from January 1, 2016, through January 31, 2017.

68.For Purposes of claims arising under the laws of Massachusetts, the Massachusetts Sub-Class consists of all members of the Plaintiff Class who were residents of Massachusetts at any time from January 1, 2016, through January 31, 2017.

69.The members of the Plaintiff Class and the respective sub-classes can be identified by business records that are within Defendants' possession, custody or control.

70.The Plaintiff Class, which consists of more than 1,400 persons residing in several different and no-contiguous states, is so numerous and geographically dispersed to make joinder of all members impractical.

71.There are questions of law and fact that are common to the members of the Plaintiff Class, including (a) whether and, if so, to what extent NEO Tech had a duty to protect the personal identifying data of its employees, including such employees' social security numbers and employment compensation, (b) whether NEO Tech negligently or otherwise breached its duty to protect the personal identifying data of its employees by releasing such data on or about January 27, 2017 , and (c) whether Plaintiffs and the other members of the Plaintiff Class are entitled to actual damages, punitive damages, restitutions, pre-judgement and post-judgement interest, attorneys' fees and costs and/or any other form of remedy or relief.

72.There are questions of law and fact that are common to the members of the

California Sub-Class, including (a) whether NEO Tech's acts, omissions and conduct relating to the personal information of its employees resident in California constitute unfair, unlawful and/or fraudulent business practices in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §17200, et seq. and (b) whether NEO Tech's acts, omissions and conduct relating to the personal information of its employees resident in California constitute one or more violations of California Civil Code §1708.815(b).

73. There are questions of law and fact that are common to the members of the Massachusetts SubClass, including (a) whether NEO Techs' acts, omissions and conduct relating to the personal information of its employees resident in Massachusetts violated the duties and standards for protecting personal information as set out in 201 Code Mass. Reg. §§ 17.01-17.04 and MGL 93H.

74. For purposes of Rule 23 (b)(2), Plaintiffs allege that Defendants acted or refused to act on grounds that apply generally to all members of the Plaintiff Class, and to all members of the respective sub-classes, making final declaratory or injunctive relief appropriate for all such members.

75. For purposes of Rule 23(b) (3) the common questions of law and fact predominate over any questions affecting only individual class members. The only individual questions concern the computation of the relief to be afforded each class member.

76. Plaintiffs' claims are typical of the claims of the class members, including the members of the respective sub-classes, as they arise out of NEO Tech's uniform wrongful conduct with respect to personal information data of all employees.

77. Plaintiffs will fairly and adequately protect the interests of all class members in the prosecution of this action and in the administration of all matters relating to the claims stated herein. Plaintiffs are similarly situated with, and have suffered similar injuries as, the members of the class they seek to represent. Plaintiffs feel they have been wronged, wish to obtain redress of the wrong, and desire the Defendants be prevented from unlawfully releasing employees' personal information in the future. To that end Plaintiffs have retained counsel experienced in class action cases. Neither the representative Plaintiffs nor counsel has any interest that might cause them to not vigorously pursue this action.

78. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, in that (a) the damages sustained by any individual class member are so small as to make individualized litigation economically impracticable, (b) individualized litigation presents the potential for inconsistent or contradictory judgements, and increases the delay and expense to all parties, (c) Plaintiffs are unaware of any litigation already initiated by or on behalf of any member of the proposed Plaintiff Class concerning  NEO Tech's release of the 2016 W-2 Data,

and (d) the difficulties likely to be encountered in the management of a class action are not great.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## (Negligence)

79. Plaintiffs reallege and incorporate by reference all prior allegations as if fully set forth herein.

80. This cause of action is brought on behalf of all the sub-classes.

81. The Employees are or were employed by NEO Tech and were issued 2016 Form W-2 from NEO Tech or for whom NEO Tech had 2016 Form W-2 data. As a condition of their employment, the Employees were obligated to provide NEO Tech with certain personal information, including their names, addresses, and Social Security numbers. In addition, the Employees provided NEO Tech with personal information of other individuals, such as their spouses and children. Such information was provided, *inter alia*, as information concerning beneficiaries for retirement plans, health insurance coverage or other insurance plans.

82. The requirement of W-2 data as a condition of employment created a duty of care for NEO Tech with regard to the personal information it stored.

83. NEO Tech had full knowledge of the sensitivity of the W-2 and social security

information and the types of harm that Plaintiffs and class members could and would

suffer if the W-2 and social security were wrongfully disclosed. NEO Tech had a duty

to Plaintiffs and each class member to exercise reasonable care in holding,

safeguarding and protecting that information.  Plaintiffs and the class members were

the foreseeable victims of any inadequate safety and security practices.  Plaintiffs and

the other class members had no ability to protect their data that was in NEO Tech's

possession.

  84. NEO Tech's duty to the Plaintiffs and other class members included, *inter alia*,

establishing processes and procedures to protect the W-2 information from wrongful

disclosure and training employees who had access to the W-2 information as to those

processes and procedures. NEO Tech had a duty to insist that the W-2 information was

encrypted as required by Massachusetts and California statutes and to insist that all

employees used the encryption software. NEO Tech is a significant player in the

technology industry, and NEO Tech, its officers, directors and management are all

aware of the risks associated with the wrongful disclosure of W-2 information and the

threats to employees posed by hackers, scammers, and other cybercriminals.

  85. NEO Tech had a duty to timely and adequately disclose to Plaintiffs and the other

class members that their W-2 information had been compromised.  Such timely

disclosure was necessary to allow Plaintiffs and the other class members to (i)

purchase identity protection services; (ii) monitor their bank accounts, credit cards and other financial accounts; and (iii) take other steps to protect against identity theft and the fraudulent use of their W-2 information by third parties.

86. NEO Tech admitted that Plaintiffs' and the other class members' W-2 information was wrongfully disclosed because of the Data Breach.

87. Because of NEO Tech's negligence, Plaintiffs and the class members have suffered and will continue to suffer damages and injury including, but not necessarily limited to: a) out-of-pocket costs and lost wages associated with addressing false tax returns filed with the IRS and state tax agencies; b) increased future out of pocket costs and lost wages in connection with preparing and filing tax returns; c) out-of-pocket costs and lost wages associated with procuring identity protection and restoration services;  d) out-of-pocket costs due to inability to access tax refunds in a timely fashion e) in the event of future identity theft, out-of-pocket costs and lost wages associated with repairing credit, reversing fraudulent charges, and other harms; and f) lost productivity and enjoyment as a result of time spent monitoring, addressing and correcting future consequences of the Data Breach. (See specific damages pled by named Plaintiff *supra*)

88. NEO Tech breached its duty to Plaintiffs and the class members by failing to maintain proper security measures, policies and procedures, and training.  NEO Tech

failed to timely notify Plaintiffs and the class members of the Data Breach. Plaintiffs and the class members have been harmed as a direct and proximate result of NEO Tech's negligence. Plaintiffs and the class members will continue to be harmed as a direct and proximate result of NEO Tech's negligence.

89. Plaintiffs and the class members are entitled to money damages for all out of pocket costs incurred to date caused by NEO Tech's negligence. Plaintiffs seek compensation for future calculable damages such as the cost of credit protection services for twenty year per employee affected. Based on the current cost of credit protection services plaintiffs seek damages of between $10,500,000 and $13,300,000 for the 1400 employees affected beginning in March 2019 when the credit protection from NEO Tech expired. Plaintiffs also seek reasonable attorneys' fees and costs under the applicable law, including Federal Rule of Civil Procedure 23 and Massachusetts Code of Civil Procedure § 1021.5.

90. Plaintiffs seek all remedies available under a negligence theory including but not limited to infliction of emotional distress, loss of enjoyment for time spent resolving the financial problems and damages created by NEO Tech.

**SECOND CAUSE OF ACTION**

**Violation of Mass. 201 CMR 17.00**

**Massachusetts General Laws Chapter 93A, Section 9, Chapter 93H**

## Unfair Competition Law, Cal. Bus. & Prof. Code § 17200

## Cal. Civil Code § 1798. 81, § 1798.82

91. Plaintiffs reallege and incorporate by reference all prior allegations as if fully set forth herein.

92. This cause of action is brought on behalf of all the classes.

93. NEO Tech engaged in unfair, unlawful and fraudulent business practices in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. ("UCL"), Cal. Civil Code § 1798.81, §1798.82 and Massachusetts General Laws Chapter 93A Section 9, Massachusetts General Laws Chapter 93H and 201 CMR 17.00. NEO Tech's acts, omissions and conduct constitute unfair, unlawful and fraudulent business practices under both California and Massachusetts statutes. (See 93A Demand Letter, attached as Exhibit 2)

94. NEO Tech's practices were unlawful and in violation of Cal. Civil Code section 1798.81.5(b) because NEO Tech failed to take reasonable measures in protecting Plaintiffs' and the class members' W-2 information.

95. NEO Tech's practices were unlawful and in violation of Mass. 201 CMR 17.00 and MGL 93H because the social security information of Massachusetts residents was not encrypted as required.

96. NEO Tech's practices were also unlawful and in violation of M.G.L. 93A § 9

because NEO Tech unreasonably delayed informing Plaintiffs and the class members about the breach of security after NEO Tech knew the breach occurred.

97. NEO Tech's acts, omissions, and conduct also constitute "unfair" business acts or practices because they offend public policy and constitute immoral, unethical, and unscrupulous activities that caused substantial injury, including Plaintiffs and class members. The gravity of harm resulting from NEO Tech's conduct outweighs any potential benefits attributable to the conduct and there were reasonably available alternatives to further NEO Tech's legitimate business interests. NEO Tech's conduct also undermines public policy as reflected in statutes such as the Information Practices Act of 1977, Cal. Civ. Code § 1798, et seq., and the California Customer Records Act, and MGL 93H and 201CMR 17.00 which were enacted to protect individuals' personal data and ensure that entities who solicit or are entrusted with personal data use reasonable security measures.

98. NEO Tech had exclusive knowledge about the extent of the Data Breach, including during the days and weeks following the Data Breach.

99. Plaintiffs and the class members would have insisted that their W-2 information be more securely protected and removed from NEO Tech's systems promptly after their employment ended. They also would have taken additional steps to protect their identities and to protect themselves from the sort of harm that could flow from NEO

Tech's lax security measures. But for NEO Tech's misrepresentations and omissions, Plaintiffs and the class members would not be experiencing identity theft, identity fraud, and/or the increased risk of harm they are now facing, because of the Data Breach. But for the fact that NEO Tech withheld information regarding the Data Breach, and subsequently disclosed it in an inconsistent and lax manner, Plaintiffs and the class members would have taken more immediate steps to protect their identities and would have been able to minimize the harm they suffered because of the Data Breach.

100. As a direct and proximate result of NEO Tech's unlawful, unfair, and fraudulent business practices as alleged herein, Plaintiffs and members of the classes have suffered injury in fact. Plaintiffs and the classes have been injured in that their social security and financial information has been compromised, subject to identity theft, identity fraud, and/or is at risk for future identity theft and fraudulent activity on their financial accounts. Class members have also lost money and property that would not have been lost but for NEO Tech's unlawful and unfair conduct.

101. As a direct and proximate result of NEO Tech's unlawful, unfair, and fraudulent business practices as alleged herein, Plaintiffs and class members already suffer from identity theft, identity and financial fraud, and/or a continuing increased risk of identity theft and financial and medical fraud due to the compromise, publication, and/or

unauthorized use of their financial and social security information. Plaintiffs and the class members have also been injured by, among other things: (1) the loss of the opportunity to control how their social security information is used; (2) the diminution in the value and/or use of their social security and personnel information entrusted to NEO Tech for the purpose of deriving employment from NEO Tech and with the expectation that NEO Tech would safeguard this information against theft and not allow access and misuse of their social security and personnel information by others; (3) the compromise, publication, and/or theft of their social security and personnel information; (4) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of financial and medical accounts; (5) lost opportunity costs associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity and health care/medical data misuse; (6) costs associated with the ability to use credit and assets frozen or flagged due to tax fraud and credit misuse, including complete credit denial and/or increased costs to use credit, credit scores, credit reports and assets; (7) unauthorized use of compromised social security and personal information to open new financial and/or health care or medical accounts; (8) tax fraud and/or other unauthorized charges to financial, health

care or medical accounts and associated lack of access to funds while proper

information is confirmed and corrected; (9) the continued risk to their identity

information and the identity of their family members and designated beneficiaries of

employment-related benefits through NEO Tech, which remain in NEO Tech's

possession and are subject to further breaches so long as NEO Tech fails to undertake

appropriate and adequate measures to protect the personnel information in its

possession; and (10) future costs in terms of time, effort and money that will be

expended to prevent, detect, contest, and repair the impact of the social security and

personnel information compromised as a result of the Data Breach for the remainder

of the Plaintiffs' and the class members' lives and the lives of their families and their

designated beneficiaries of employment-related benefits through NEO Tech.

102. Because of NEO Tech's violations of the UCL, Plaintiffs and the class members

are entitled to injunctive relief, including, but not limited to an order that NEO Tech:

(1) engage third party security auditors/penetration testers as well as internal security

personnel to conduct testing consistent with prudent industry practices, including

simulated attacks, penetration tests, and audits on NEO Tech's systems on a periodic

basis; (2) engage third party security auditors and internal personnel to run automated

security monitoring consistent with prudent industry practices; (3) audit, test, and train

its security personnel regarding any new or modified procedures; (4) purge, delete and

destroy, in a secure manner, employee data not necessary for its business operations; (5) conduct regular database scanning and security checks consistent with prudent industry practices; (6) periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach consistent with prudent industry practices; (7) receive periodic compliance audits by a third party regarding the security of the computer systems NEO Tech uses to store the social security and personnel information of its current and former employees; (8) meaningfully educate its current and former employees about the threats they face as a result of the loss of their social security information and other W-2 information to third parties, as well as the steps they must take to protect themselves; and (9) provide ongoing identity theft protection, monitoring, and recovery services to Plaintiffs and class members, as well as to their dependents and designated beneficiaries of employment-related benefits through NEO Tech for the next 15 years at a minimum.

103. Because of NEO Tech's unlawful, unfair, and fraudulent business practices, Plaintiffs and the class members are entitled to relief, including attorneys' fees and costs, restitution, declaratory relief, and a permanent injunction enjoining NEO Tech from its unlawful and unfair practices. Plaintiffs also seek reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23,

Massachusetts Rules of Civil Procedure Rule 23 and California Code of Civil

Procedure § 31021.5.

## THIRD CAUSE OF ACTION

### Declaratory Judgment)

104. Plaintiffs reallege and incorporate by reference all prior allegations as if fully set

forth herein.

105. This cause of action is brought on behalf of all the classes. As set forth above,

Plaintiffs and the class members have valid claims against NEO Tech for negligence

and violations of California, Massachusettsand federal statutes regarding the

protection of identifying information. An actual controversy has arisen in the wake of

NEO Tech's Data Breach regarding NEO Tech's current obligations to provide

reasonable data security measures to protect the 2016 W-2 information of Plaintiffs

and the class members in the past and going forward from January 27 2017.

106. Plaintiffs seek a declaration that to comply with its existing obligations, NEO

Tech must implement specific additional, prudent industry security practices, as

outlined below, to provide reasonable protection and security to the social security and

other W-2 information of Plaintiffs and the class members. Specifically, Plaintiffs and

the class members seek a declaration that (a) NEO Tech's existing security measures

do not comply with its obligations, and (b) that to comply with its obligations, NEO

Tech must implement and maintain reasonable security measures on behalf of Plaintiffs and the Nationwide Class, including, but not limited to: (1) engaging third party security auditors/penetration testers as well as internal security personnel to conduct testing consistent with prudent industry practices, including simulated attacks, penetration tests, and audits on NEO Tech's systems on a periodic basis; (2) engaging third party security auditors and internal personnel to run automated security monitoring consistent with prudent industry practices; (3) auditing, testing, and training its security personnel regarding any new or modified procedures; (4) purging, deleting and destroying, in a secure manner, employee data not necessary for its business operations; (5) conducting regular database scanning and security checks consistent with prudent industry practices; (6) periodically conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach consistent with prudent industry practices; (7) receiving periodic compliance audits by a third party regarding the security of the computer systems NEO Tech uses to store the personal information of its current and former employees; (8)meaningfully educating its current and former employees about the threats they face as a result of the loss of their 2016 W-2 information to third parties, as well as the steps they must take to protect themselves; and (9) providing ongoing identity theft protection, monitoring, and recovery services

to Plaintiffs and class members for at least fifteen years as well as to their dependents and designated beneficiaries of employment-related benefits through NEO Tech.

107. Each Plaintiff and class member is entitled to a declaration of rights stating that NEO Tech is obligated, pursuant to the terms established by the Court, to reimburse said individuals for all future harm caused by the Data Breach.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and on behalf of the proposed classes, request that the Court:

a.  Certify this case as a class action, appoint Plaintiffs as class representatives and appoint Plaintiffs' counsel to represent the classes;

b.  Find that NEO Tech breached its duty of care toEmployees by failing to safeguard and protect Plaintiffs' and the class members' 2016 W-2 information which was compromised in the Data Breach;

c.  Award Plaintiffs and Class members appropriate relief, including actual damages, punitive damages, and statutory damages;

d.  Award equitable, injunctive, declaratory relief as appropriate;

e.  Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

f.  Award pre-judgment and post-judgment interest as prescribed by law; and

g. Grant additional legal or equitable relief as the Court may find just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a trial by jury on all issues so triable.
Dated: March 22, 2019
Respectfully submitted,


Cristina P. Carrier, Esq.

1380 Main St, Suite 413

Springfield, MA 01103

Telephone:(877)628-7694

Facsimile:(413) 895-5352

E-mail: cristina@cristinapcarrier.com
Counsel for Plaintiffs


## CERTIFICATE OF SERVICE

**I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants on March 22, 2019**

**/s/ Cristina P Carrier**