UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KRIS PORTIER, EDWARD SNELGROVE, ANTONIO BATALHA, KRISTINE TANSIL, JOHN TANSIL, JOSE RIVAS, MILTON MANZANO, FRANK N. RODA, REINALDO PEREZ, RICHARD PEASE, and STEWART SCOLES, individually, and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) | |
| | ) | Case No. 3:17-cv-30111-TSH |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| NEO TECHNOLOGY SOLUTIONS, ET AL., | ) ) | |
| Defendants. | ) ) | |

### REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO ENFORCE RELEASE OR COMPEL ARBITRATION
(Docket No. 50)

ROBERTSON, U.S.M.J.

I.    INTRODUCTION

Ten present or former employees and the spouse of a former employee (collectively "Plaintiffs") of NEO Technology Solutions ("NEO Tech") d/b/a OnCore Holdings, LLC, OnCore Manufacturing, LLC, Natel Engineering Co., Inc., NEO Tech, North America, and NEO Tech Inc. (collectively "Defendants"), brought this putative class action claiming that Defendants disclosed the employees' 2016 Internal Revenue Service ("IRS") Form W-2 information, including their Social Security numbers, to an unauthorized third party.  Plaintiffs' Second Amended Complaint ("Complaint") alleges that Defendants are liable for negligence (Count I) and for violations of Massachusetts and California statutes (Count II) and seeks a Declaratory Judgment (Count III) (Dkt. No. 45).  Seven former employees among the named Plaintiffs

1

(hereinafter "Employee-Plaintiffs") and Defendants executed documents entitled "Severance Agreements" ("Agreements") that contained releases and arbitration provisions (Dkt. Nos. 52-1 at 18-33, 52-2, 52-3, 52-4).  Defendants have moved to enforce the releases or compel arbitration (Dkt. No. 50).[1]  The motion has been referred to the undersigned for a report and recommendation (Dkt. No. 53).  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72.  For the reasons that follow, I recommend that so much of the motion as seeks to enforce the releases be denied, and that so much of the motion as seeks to compel arbitration be allowed in part and denied in part.

II.    BACKGROUND

Through counsel, Plaintiffs represent in their opposition to Defendants' Motion to Enforce Release or Compel Arbitration that, in or around late 2016, Defendants announced that they intended to relocate a manufacturing plant from Springfield to the middle of Massachusetts. In or around the spring of 2017, Defendants informed employees in Springfield and in Eastern Massachusetts that the employees' jobs would be moved to a new location and, if the employees were unwilling to make the commute, their employment would be terminated.  Later in 2017, Defendants agreed to provide severance to employees who chose to leave their jobs because they were unwilling to commute to the new location (Dkt. No. 56 at 6).

In consideration of receiving severance pay, three named Employee-Plaintiffs -- Batalha, Perez, and Tansil -- executed Agreements before the January 27, 2017 data breach (Dkt. No. 52-3 at 15, 27; Dkt. No. 52-4 at 9).  Employee-Plaintiffs Manzano, Pease, Portier, and Rivas signed

---

[1] Defendants have also filed a separate motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), which has been referred to the undersigned for a report and recommendation (Dkt. Nos. 48, 53).

Agreements in October 2017 after the data breach (Dkt. No. 52-1 at 26; Dkt. No. 52-2 at 6, 19;

Dkt. No. 52-3 at 3).

The Agreements, which are appended to Defendants' attorney's affidavit, contained the

following similarly worded provisions:

<u>Release and Waiver of All Claims</u>

Employee elects to receive the benefits specified under Section 3 of this Agreement and understands the benefits are being paid in consideration for Employee's general release and waiver of all claims as set forth below.  Employee agrees the benefits set forth in Section 3 are in full satisfaction of any claims, liabilities, demands or causes of action, known or unknown, that Employee and his heirs, successors and assigns ever had, now have, or may claim to have had against the [Defendants] as of the date of this Agreement.

Employee, and all of his or her heirs, assigns, agents, principals, representatives, insurers, attorneys and successors in interest, expressly releases, acquits, and forever discharges the [Defendants] from any and all claims, demands, causes of actions, obligations, and liabilities whatsoever, both known and unknown, in law or in equity, and all future effects of past actions, and particularly, without limiting the generality of the foregoing, all matters relating to or arising out of the Employee's employment with the Company or the termination of his or her employment with the Company . . . which Employee ever had, has, or can assert to have had against the Released Parties occurring at any time prior to the date of execution of this Release. . . .

Simply stated, this Agreement is a release of any and all claims the Employee has, had, may have, or may have had against any or all of the [Defendants].

. . . Employee also agrees and promises he/she will not file any lawsuit asserting any of the released claims or causes of action set forth above.

Employee fully understands that if the facts upon which the Release is given are found hereafter to be other than or different from the facts now believed to be true, he/she expressly accepts and assumes the risk of such possible difference in facts and agrees that the Release shall be and remain effective notwithstanding any such differences in facts. Employee hereby expressly agrees that the Release shall extend to and apply to all unknown, unsuspected and unanticipated injuries and damages, as well as those that are now disclosed.

(See, e.g., Dkt. No. 52-1 at 21).

<u>Arbitration</u>

Any dispute or claim arising out of or in connection with this Agreement will be finally settled by binding arbitration in or adjacent to Hampden County, Massachusetts in accordance with the employment dispute resolution rules of the American Arbitration Association by one arbitrator appointed in accordance with those rules.  The arbitrator

3

shall apply Massachusetts law, without reference to rules of conflicts of law or rules of statutory arbitration, to the resolution of any dispute. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Notwithstanding the foregoing, the parties may apply to any court of competent jurisdiction for preliminary or interim equitable relief, or to compel arbitration in accordance with this Section. The direct expense of any arbitration proceeding shall be borne equally by the Company and the Employee, unless otherwise required by law. Each party shall bear its own attorneys' fees.[2]

(See, e.g., Dkt. No. 52-1 at 24).

III.    MOTION TO ENFORCE RELEASE

Defendants allege that the Employee-Plaintiffs "released their claims in exchange for severance" and asks the court to "enforce" the releases and dismiss the Employee-Plaintiffs' claims with prejudice (Dkt. No. 51 at 8). In their opposition, Employee-Plaintiffs argue that the Agreements are unconscionable contracts of adhesion, executed under duress and are, therefore, unenforceable (Dkt. No. 56 at 8-11).

Notwithstanding the title of Defendants' motion, it is, in reality, a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See United States v. Andrade*, CR No. 10-045-ML, 2017 WL 2633494, at *2 (D.R.I. June 19, 2017) ("it is the substance of the motion which controls, not the title."). Because release is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), the burden falls to Defendants to prove it. *See Cabán Hernández v. Philip Morris USA, Inc.,* 486 F.3d 1, 8 (1st Cir. 2007); *Melanson v. Browning-Ferris Indus., Inc.,* 281 F.3d 272, 276 (1st Cir. 2002).

While this can be accomplished through a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal can occur only when facts that "conclusively establish the affirmative defense" are "definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice … ."

---

[2] The Arbitration provision in Mr. Tansil's Agreement provided for arbitration in San Diego County, California and directed the arbitrator to apply California law (Dkt. No. 52-4 at 8).

*Learner v. Marvin Lumber & Cedar Co.*, Civil No. 08-cv-177-JL, 2008 WL 5285028, at *1 (D.N.H. Dec. 19, 2008) (quoting *In re Colonial Mtg. Bankers Corp.,* 324 F.3d 12, 16 (1st Cir. 2003)). *See Proeung v. Nova Biomedical Corp.,* C.A. No. 18-11106-MLW, 2019 WL 1207171, at *3 (D. Mass. Mar. 14, 2019) ("The court may only dismiss an action on the basis of an affirmative defense if '"the facts establishing the defense [are] clear on the face of the plaintiff's pleadings."'") (alteration in original) (quoting *Blackstone Realty LLC v. F.D.I.C.,* 244 F.3d 193, 197 (1st Cir. 2001)).

Because the Agreements and releases are not mentioned in the Complaint and are not included in the categories of documents of which the court can take notice on a Rule 12(b)(6) motion, they are not properly before the court for purposes of ruling on a motion to dismiss. "Ordinarily . . . any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (citing Fed. R. Civ. P. 12(b)(6)). There is a limited exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.*

Relying on *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33-34 (1st Cir. 2001), Defendants argue that the Agreements are properly before the court because their alleged liability under the Complaint depends "'directly'" on whether the Employee-Plaintiffs released the claims they now raise (Dkt. No. 51 at 8). Similar assertions have been rejected by another session of this court and by the United States District Court for the District of Maine. *See O'Rourke v. Hampshire Council of Gov'ts.,* 121 F. Supp. 3d 264, 276 (D. Mass. 2015) (on a motion to dismiss, the court rejected defendant's request for consideration of a settlement

agreement, which was not referenced in the complaint).  "Under First Circuit precedent, when 'a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged),' then the court can review it upon a motion to dismiss."  *Alt. Energy, Inc.,* 267 F.3d at 34 (quoting *Beddall v. State St. Bank & Tr. Co.,* 137 F.3d 12, 17 (1st Cir. 1998)).  However, in contrast to *Alt. Energy, Inc.* where the "First Amended Complaint for Declaratory Judgment refer[red] to the 1998 Settlement Agreement or its terms numerous times," *id.,* here, the Agreements that include the releases are not referred to in the Complaint, are not related to any allegation therein, and, therefore, are not before the court for purposes of Defendants' motion to dismiss.  *See Oren v. Verizon Commc'ns,* 224 F.R.D. 527, 529 (D. Me. 2004) ("The Settlement and Release Agreement is not central to the [p]laintiff's [c]omplaint in this case, and is thus not properly considered by the [c]ourt on a Motion to Dismiss.") (footnote omitted).  Consequently, the court recommends that so much of Defendants' motion as seeks to enforce the releases in the Agreements at issue be denied.

    IV.    MOTION TO COMPEL ARBITRATION

    A.    <u>Defendants are Entitled to Arbitration as to Agreements That Were Executed After the Data Breach</u>

As an alternative to dismissal based on the releases, Defendants, citing the arbitration provisions of the Agreements, move to compel arbitration under § 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-301.  Defendants must demand arbitration at the earliest possible time or risk waiver.  *See In re Tyco Int'l Ltd. Sec. Litig.,* 422 F.3d 41, 44 (1st Cir. 2005) ("'an arbitration provision has to be invoked in a timely manner or the option is lost.'") (citation omitted).  Employee-Plaintiffs do not dispute that the Agreements contain arbitration provisions. Instead, they challenge the validity of the Agreements that were executed after the litigation was filed, arguing that those Agreements are void in their entirety because they were obtained under

duress and were unconscionable contracts of adhesion (Dkt. No. 56 at 8-12).  They support their

contentions with the unsworn statements of their attorney in their opposition to the motion to

compel arbitration (Dkt. No. 56 at 6-8).  It is up to the arbitrator, however, to rule on any such

challenges to the application of the post-breach Agreements to the claims asserted in this case.

Although "[t]he First Circuit Court of Appeals has yet to address the precise standard of

review for a motion to compel arbitration," *Johnson & Johnson Int'l v. P.R. Hosp. Supply, Inc.,*

258 F. Supp. 3d 255, 259 (D.P.R. 2017), other district courts in this circuit and courts in other

circuits have applied the summary judgment standard to actions under § 4 particularly where, as

here, the court is asked to consider evidence beyond the facts pled in the complaint.  *See Pla–Fit*

*Franchise, LLC v. Patricko, Inc.*, No. 13-cv-489-PB, 2014 WL 2106555, at *3 (D.N.H. May 20,

2014) (citing *Bensadoun v. Jobe-Riat,* 316 F.3d 171, 175 (2d Cir. 2003); *Par-Knit Mills, Inc. v.*

*Stockbridge Fabrics Co.,* 636 F.2d 51, 54 & n.9 (3d Cir. 1980), *abrogated on other grounds by*

*Aliments Krispy Kernels, Inc. v. Nichols Farms,* 851 F.3d 283 (3d Cir. 2017)); *Cogent Comput.*

*Sys., Inc., v. Turbochef Techs., Inc.,* C.A. No. 06-280S, 2008 WL 219343, at *5 (D.R.I. Jan. 24,

2008); *Boulet v. Bangor Sec. Inc.*, 324 F. Supp. 2d 120, 123 (D. Me 2004) (applying summary

judgment standard).  Defendants have supported their motion to compel with their attorney's

affidavit, to which the Agreements are attached (Dkt. No. 52 at 2-3).  *See* Fed. R. Civ. P.

56(c)(1), (4) (affidavits may be used to support a party's position).  Based on that evidence,

Defendants contend "that there is no genuine issue as to any material fact and that the[y] [are]

entitled to judgment as a matter of law."  *Cogent Comput. Sys., Inc.,* 2008 WL 219343, at *5

(citing *S & G Elec., Inc. v. Normant Sec. Grp., Inc.,* Civil Action No. 06-3759, 2007 WL

210517, at *2 (E.D. Pa. Jan. 24, 2007); *Salvadori v. Option One Mortg. Corp.,* 420 F. Supp. 2d

349, 353 (D.N.J. 2006); *Smarttext Corp. v. Interland, Inc.,* 296 F. Supp. 2d 1257, 1262–63 (D.

Kan. 2003)).  If Defendants sustain their burden, the Employee-Plaintiffs must rebut Defendants'
contention and demonstrate the existence of a genuine issue of material fact.  *See Soto v. State
Indus. Prods., Inc.,* 642 F.3d 67, 72 n.2 (1st Cir. 2011) (discussing, in a footnote, plaintiff's
failure to identify specific evidence that created a genuine issue of material fact requiring a trial
under 9 U.S.C. § 4) (citing *Tinder v. Pinkerton Sec.,* 305 F.3d 728, 735 (7th Cir. 2002)).

"Federal policy favors arbitration agreements and requires that the [c]ourt rigorously
enforce them." *Lynn v. Gen. Elec. Co.*, 407 F. Supp. 2d 1257, 1260 (D. Kan. 2006) (citing
*Shearson/Am. Exp., Inc. v. McMahon,* 482 U.S. 220, 226 (1987); *Dean Witter Reynolds, Inc. v.
Byrd,* 470 U.S. 213, 221 (1985)).  *See PowerShare, Inc. v. Syntel, Inc.,* 597 F.3d 10, 15 (1st Cir.
2010) ("federal law undeniably includes a policy favoring arbitration.") (citing *Volt Info. Scis.,
Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.,* 489 U.S. 468, 475–76 (1989)).  "Section 2 of the
FAA states that 'an agreement in writing to submit to arbitration an existing controversy . . . shall
be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the
revocation of any contract.'" *Escobar-Noble v. Luxury Hotels Int'l of P. R., Inc.*, 680 F.3d 118,
121 (1st Cir. 2012).  "To the extent that an agreement satisfies the imperatives of section 2, the
FAA empowers an inquiring court to stay a judicial proceeding filed by a resisting party." *Id.*
(citing 9 U.S.C. § 3).  "Should the resisting party remain recalcitrant, the court may compel
arbitration." *Id.* (citing 9 U.S.C. § 4).  "Although sections 3 and 4 of the FAA are designed to
operate independently, parties desiring to arbitrate commonly will file a single motion seeking
the simultaneous benefit of both provisions." *Id.* (citing *Matterhorn, Inc. v. NCR Corp.,* 763
F.2d 866, 871 (7th Cir. 1985)).

"A party seeking to compel arbitration under the FAA must demonstrate '[1] that a valid
agreement to arbitrate exists, [2] that the movant is entitled to invoke the arbitration clause, [3]

that the other party is bound by that clause, and [4] that the claim asserted comes within the clause's scope.'" *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.,* 638 F.3d 367, 375 (1st Cir. 2011) (quoting *InterGen N.V. v. Grina,* 344 F.3d 134, 142 (1st Cir. 2003)). "'The Supreme Court has differentiated between two types of challenges to the validity of arbitration agreements:  (1) challenges to the validity of an entire contract which contains an arbitration clause, and (2) challenges to the validity of the specific agreement to resolve the dispute through arbitration.'" *Peterson v. Binnacle Capital Servs. LLC,* 364 F. Supp. 3d 108, 113 (D. Mass. 2019) (quoting *Farnsworth v. Towboat Nantucket Sound, Inc.*, 790 F.3d 90, 96 (1st Cir. 2015)).  *See Rent–A– Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 70 (2010); *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 444 (2006).  "In a line of cases beginning with *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395 (1967), the Court has held that challenges of the first type are for the arbitrator to decide, whereas challenges of the second type are for the courts to decide, if timely and properly made."  *Farnsworth,* 790 F.3d at 96 (citing *Rent–A–Ctr.,* 561 U.S. at 70–71; *Buckeye Check,* 546 U.S. at 444–45; *Prima Paint,* 388 U.S. at 402–04; *Dialysis Access Ctr., LLC,* 638 F.3d at 376–77, 383).

Employee-Plaintiffs who signed Agreements after the breach have not challenged the existence or validity of the arbitration clauses, but contend that the Agreements, including the arbitration provisions, are invalid because they were "force[d]" to sign them (Dkt. No. 56 at 5, 7, 8).  "[I]f a party fails to challenge the validity of the arbitration clause itself, the agreement to arbitrate is enforceable and any dispute about the validity of the contract as a whole goes to the arbitrator."  *Farnsworth,* 790 F.3d at 97 (citing *Rent–A–Ctr.,* 561 U.S. at 70–72).  Put another way, "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."  *Buckeye Check,* 546 U.S. at 445.  *See Farnsworth,* 790 F.3d at

9

97.  "[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."  *Buckeye Check,* 546 U.S. at 445-46.  Because the employees who signed the Agreements after the data breach and the inception of this litigation challenge the Agreements in their entirety and do not separately target the arbitration provisions, the issue of the validity of the Agreements, including the releases, is for the arbitrator to decide.  *See Farnsworth,* 790 F.3d at 98; *Peterson,* 364 F. Supp. 3d at 114.

To the extent Employee-Plaintiffs attempt to raise a factual challenge to the validity of the arbitration clauses -- and that does not appear to be the case -- their contentions concerning duress and unconscionability are not adequately supported.  "[F]or the most part, general principles of state contract law control the determination of whether a valid agreement to arbitrate exists."  *Campbell v. Gen. Dynamics Gov't Sys. Corp.,* 407 F.3d 546, 552 (1st Cir. 2005).  Massachusetts law applies to the four Employee-Plaintiffs' Agreements that were signed after the data breach (see, e.g., Dkt. No. 52-1 at 24).  "'To avoid a contract on the basis of duress [under Massachusetts law], a party must show that conduct by the other party caused him to enter into the contract "under the influence of such fear as precludes him from exercising free will and judgment."'"  *Vasapolli v. Rostoff*, 864 F. Supp. 215, 222 (D. Mass. 1993), *aff'd,* 39 F.3d 27 (1st Cir. 1994) (quoting *Coveney v. President & Trs. of Coll. of Holy Cross,* 445 N.E.2d 136, 140 (Mass. 1983)).  "'[T]o prove that the terms of a contract are unconscionable [in Massachusetts], a plaintiff must show both substantive unconscionability (that the terms are oppressive to one party) and procedural unconscionability (that the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise).'"  *Bekele v. Lyft, Inc.*, 199 F. Supp. 3d 284, 299 (D. Mass. 2016), *aff'd,*

918 F.3d 181 (1st Cir. 2019) (quoting *Machado v. System4 LLC*, 28 N.E.3d 401, 414 (Mass. 2015) (citation omitted) (quoting another source)).

Employee-Plaintiffs' claims of duress and unconscionability are not properly supported and are insufficient as a matter of law.  "'[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial.'"  *Soto*, 642 F.3d at 72 n.2 (quoting *Tinder,* 305 F.3d at 735).  Because motions to compel arbitration are reviewed under the summary judgment standard, contentions challenging the validity of arbitration clauses must be supported by "depositions, documents, electronically stored information, affidavits or declarations [based on personal knowledge], stipulations . . . admissions, interrogatory answers," or other material that is acceptable under Fed. R. Civ. P. 56, which governs summary judgment motions.  Fed. R. Civ. P. 56(c)(1).  *See Manning v. Energy Conversion Devices, Inc.,* 833 F.2d 1096, 1103 (2d Cir. 1987)  ("A party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of this claim in order to precipitate the trial contemplated by 9 U.S.C. § 4.").  An attorney's unsworn statements in an opposition to a motion to compel arbitration are insufficient to demonstrate a genuine issue of material fact.  *See Soto,* 642 F.3d at 72 n.2 (plaintiff's "unsworn declaration" concerning the arbitration clause did not raise a genuine issue of material fact); *Sheet Metal Workers' Ass'n Local 19 v. J.S. Mech. Contractors, Inc.,* 973 F. Supp. 516, 521-22 (E.D. Pa. 1997) (defendant corporation, which did not submit an affidavit, deposition testimony, report from a handwriting expert, or other evidence to support its assertion challenging the validity of the arbitration agreement, failed to create a genuine issue of material fact and was bound to arbitrate).

11

Consequently, in this court's view, the four Employee-Plaintiffs who executed Agreements after the data breach are bound by the arbitration provisions in those Agreements. Accordingly, this court recommends that the claims of these four named Plaintiffs and other similarly situated putative members of the class be stayed pending arbitration.

B.     The Claims of Employees Whose Agreements Were Executed Before the Data Breach are Not Subject to Arbitration

The parties' written submissions do not separately address the enforceability of the arbitration clauses in the Agreements that three named Employee-Plaintiffs executed in January and May 2016 prior to the data breach.  At oral argument, Defendants relied on *Henry Schein, Inc. v. Archer & White Sales, Inc.* (hereinafter *Schein*)*,* 139 S. Ct. 524 (2019), to contend that an arbitrator should determine whether the Agreements released the claims that arose after the Agreements were executed.  According to Defendants, because the Complaint alleges that NEO Tech's security measures were deficient when the Employee-Plaintiffs signed the Agreements prior to the data breach in January 2017 and because the Employee-Plaintiffs' claims are based on those lapses in cyber security, the three Employee-Plaintiffs released those claims. Defendants' contention is not supported by the law of Massachusetts or California.

"Whether or not a dispute is arbitrable is typically a question for judicial determination." *Dialysis Access Ctr., LLC,* 638 F.3d at 375.  *See Granite Rock Co. v. Int'l. Bhd. of Teamsters,* 561 U.S. 287, 296 (2010) ("It is well settled in both commercial and labor cases that whether parties have agreed to 'submi[t] a particular dispute to arbitration' is typically an '"issue for judicial determination."'") (alteration in original) (quoting *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002)).  As previously stated, "[w]hen deciding a motion to compel arbitration, a court must determine whether '(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an

arbitral forum has not waived its right to arbitration.'" *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008) (quoting *Bangor Hydro-Elec. Co. v. New England Tel. & Tel. Co.*, 62 F. Supp. 2d 152, 155 (D. Me. 1999)); *see also Granite Rock Co.*, 561 U.S. at 299 (a court may only compel arbitration of a dispute that the parties have agreed to submit to arbitration).  Here, the parties do not dispute the existence of an arbitration clause in the Agreements, nor have Defendants sat on and thereby waived any right they may have to arbitration.  "Thus, the only remaining issue is whether [Plaintiffs'] claims come within the scope of the arbitration [clauses]." *Cummings v. City of Newton*, 164 F. Supp. 3d 227, 231 (D. Mass. 2016).  In this court's view, as to those Plaintiffs who signed Agreements before the data breach, their claims do not come within the scope of the arbitration clauses.

The Agreements address the termination of employment and severance pay for the employees whose employment with Defendants was terminated.  In consideration of the receipt of severance pay, the employees agreed to release potential claims arising from their employment.  In temporal terms, the Agreements released claims relating to or arising out of an employee's employment which the employee "ever had, has, or can assert to have had against the [Defendants] *occurring at any time prior to the date of execution of [the] Release*" (Dkt. No. 52-3 at 11, 23; Dkt. No. 52-4 at 6) (emphasis added).  Thus, by their plain terms, the Agreements only released claims that had accrued prior to their execution.  The arbitration provisions, in turn, only apply to "any dispute or claim arising out of or in connection with" the Agreements (see, e.g., Dkt. No. 52-4 at 8).  It follows that, if the claims at issue do not arise out of or in connection with the Agreements, then the arbitration clauses do not apply.  *See Granite Rock Co.,* 561 U.S. at 303-04; *Cummings,* 164 F. Supp. 3d at 231-32.

Contrary to Defendants' contention raised at oral argument, in Massachusetts, "[a] cause of action for negligence . . . does not accrue simply upon the occurrence of a negligent act. . . . Rather, a negligence claim typically accrues at the time of injury or harm." *John Beaudette, Inc. v. Sentry Ins. A Mut. Co.*, 94 F. Supp. 2d 77, 105 (D. Mass. 1999) (citations omitted).  Moreover, a general release, such as the release at issue here, only waives claims that existed "at the time [the release] was executed." *Eck v. Godbout,* 831 N.E.2d 296, 302 (Mass. 2005).  Here, the claims asserted in the Complaint only accrued in January 2017 when NEO Tech permitted a cyber-criminal to access its employees' W-2 data.  Defendants' allegedly deficient cyber security may have made the data breach possible, but that state of affairs did not cause any employee injury until the employee's personal data was released.  Batalha's and Perez's Agreements were executed in 2016, before the injury occurred.  Inasmuch as Batalha's and Perez's claims related to the data breach had not accrued when they executed the releases, those claims were not released. *See id.*  Consequently, those claims are not a subject of the Agreements and are not within the scope or the arbitration provisions, which, by their terms, only apply to claims that arise out of, or in connection with the Agreements. *See Cummings*, 164 F. Supp. 3d at 231-32 (a due process claim that arose after the termination of the plaintiff's employment was not within the scope of the parties' arbitration agreement, which applied to disputes that led to the termination of plaintiff's employment).

Nor did Mr. Tansil release Defendants from liability for future claims.  "Under California law, a release is the abandonment, relinquishment or giving up of a right or claim to the person against whom it might have been demanded or enforced, and its effect is to extinguish the cause of action." *Operating Eng'rs Pension Tr. Fund v. Clark's Welding & Mach.,* 688 F. Supp. 2d 902, 910 (N.D. Cal. 2010).  "The interpretation of a release is governed by the same principles

applicable to any other contract." *Reudy v. Clear Channel Outdoors, Inc.*, 693 F. Supp. 2d 1091, 1113 (N.D. Cal. 2010) (citing *General Motors Corp. v. Superior Court*, 15 Cal. Rptr. 2d 622, 627 (Cal. Ct. App. 1993)).  "These principles provide that '"[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."'"  *Classical Silk, Inc. v. Dolan Grp., Inc.*, Case No. CV 14-09224-AB(MRWx), 2016 WL 7638113, at *4 (C.D. Cal. Feb. 2, 2016) (quoting *Yount v. Acuff Rose–Opryland*, 103 F.3d 830, 836 (9th Cir. 1996) (quoting Cal. Civ. Code § 1636)).  "The parties' intent should be ascertained by the language of the contract itself, when the language is 'clear and explicit.'"  *Ball v. Johanns,* No. CIV. S-07-1190 LKK/DAD, 2007 WL 3124962, at *3 (E.D. Cal. Oct. 24, 2007).

Mr. Tansil's Agreement contained a waiver of rights under California Civil Code Section 1542, which states:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Cal. Civ. Code § 1542.  However, section 1542 does not apply to bar causes of action that arise after the date the release was executed.  *See Ball,* 2007 WL 3124962, at *4 (the agreement, which contained a § 1542 waiver, released "only . . . those claims which did or may then have existed at the time of the execution of the settlement agreement.").  "For several decades, California courts have exhibited a 'strong and growing distaste . . . for exculpatory release provisions releasing a tortfeasor from liability for his or her future negligence or misconduct.'" *Vita-Herb Nutriceuticals Inc. v. Probiohealth LLC*, No. SACV 11-1463 DOC (MLGx), 2012 WL 3903454, at *6 (C.D. Cal. Sept. 6, 2012) (quoting *Ferrell v. S. Nevada Off–Rd. Enthusiasts, Ltd.,* 195 Cal. Rptr. 90, 92 (Cal. Ct. App. 1983)).  "Under California law, '[t]o be valid and

enforceable, a written release exculpating a tortfeasor from liability for future negligence or misconduct must be clear, unambiguous and explicit in expressing the intent of the parties.'" *Id.* (quoting *Baker Pac. Corp. v. Suttles,* 269 Cal. Rptr. 709, 712 (Cal. Ct. App. 1990)).  The language of Mr. Tansil's release, which was the same as the Massachusetts Employee-Plaintiffs', clearly states that the release does *not* apply to claims, such as claims based on the data breach, which did not accrue until after the execution of the Agreement (Dkt. No. 52-4 at 6).  *See Edwards v. Arthur Andersen LLP,* 189 P.3d 285, 296 (Cal. 2008) ("'Where the language of a contract is clear and not absurd, it will be followed.'") (citation omitted).  Defendants do not contest the clarity of the language or suggest a different interpretation.

Because the releases in Batalha's, Perez's, and Tansil's Agreements do not cover the claims raised in the Complaint, the terms of those Agreements, including the arbitration provisions, do not apply to the instant dispute.  Accordingly, in this court's view, the Employee-Plaintiffs cannot be compelled to submit their claims arising from the data breach to arbitration. *Schein* does not compel a different result.  At issue in *Schein* was the "'wholly groundless'" exception that some courts applied to determine questions of the arbitrability of a dispute in cases in which the parties agreed to have an arbitrator determine arbitrability.  *See Schein,* 139 S. Ct. at 527-28.  The Court reaffirmed its position that, if the parties to a contract agreed to have an arbitrator determine the question of "whether their arbitration agreement applie[d] to the particular dispute concerning that agreement," courts must "respect the parties' decision as embodied in the contract."  *Id.*  In contrast to the instant case, the *Schein* contract applied to the subject of the parties' dispute.  *Id.* at 528.  Here, on the other hand, the Agreements by their terms do not apply to claims arising from a serious data breach that occurred after the termination of an employee's employment and execution of an Agreement.  Consequently, in the court's view, the

arbitration provisions in the Agreements do not apply to the data breach claims of employees who signed Agreements before the data breach occurred.

V.    CONCLUSION

For the foregoing reasons, the court recommends that Defendants' Motion to Enforce Release and Compel Arbitration (Dkt. No. 50) be denied insofar as it requests dismissal based on the affirmative defense of release and moves to compel arbitration as to the three Employee-Plaintiffs who executed Settlement Agreements in 2016 (Batalha, Perez, and Tansil), but be allowed insofar as it requests the court to compel Employee-Plaintiffs Manzano, Pease, Portier, and Rivas (and others similarly situated) to arbitrate their data breach claims.  Accordingly, the court recommends that a stay be entered in the cases of Employee-Plaintiffs Manzano, Pease, Portier, and Rivas (and others similarly situated) pending the outcome of arbitration.[3]

Date:  December 31, 2019                          /s/ Katherine A. Robertson
                                                  KATHERINE A. ROBERTSON
                                                  United States Magistrate Judge

---

[3] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.